Larry **MILBERG** and Irene G. Milberg, Plaintiffs,

v.

**LAWRENCE CEDARHURST FEDERAL SAVINGS AND LOAN ASSO-CIATION, Defendant.**

Bernard **BRONHEIM** and Gloria Bronheim, Plaintiffs,

v.

**FRANKLIN SOCIETY FEDERAL SAV-INGS AND LOAN ASSOCIA-TION, Defendant.**

**Nos. 71 C 392, 71 C 856.**

United States District Court, E. D. New York.

May 20, 1975.

See also, 2 Cir., 496 F.2d 523.

Melvyn I. Weiss, New York City, for plaintiffs.

Crowe, McCoy, Agoglia, Congdon & Zweibel, Mineola, N. Y., for defendant.

Memorandum of Decision and Order

MISHLER, Chief Judge.

Plaintiffs Larry Milberg and Irene G. Milberg executed a note and mortgage in favor of Lawrence Cedarhurst Federal Savings and Loan Association (Lawrence) on or about July 8, 1960. The mortgage note provided that in addition to monthly payments of principal and interest, the mortgagor was obligated to pay one-twelfth of the annual taxes monthly.[1] It further provided that the

1. The Home Loan Bank Board regulations authorized the mortgagee to collect "the

equivalent of $\frac{1}{12}$ of the estimated annual taxes, assessments, insurance premiums and

"sums shall be held in a trust account for the payment of said taxes as they fall due." The complaint alleges a claim on behalf of the Milbergs that Lawrence demanded and received from the Milbergs installment payments for future taxes which "far exceeded any sums prospectively required to pay real estate taxes in that year, and defendant's estimates as to said amounts were made in bad faith (Complaint, ¶ 8)." The claim also alleges that Lawrence used the monies it received in excess of the amount required for payment of future taxes as part of its general funds, and that it has not paid the Milbergs interest on these sums. The second claim is a class action incorporating by reference the Milbergs' individual claim.

The complaint filed by Bernard Bronheim and Gloria Bronheim closely follows the form of the Milbergs' complaint. The first claim states that the Bronheims were compelled to pay to the Franklin Society Federal Savings and Loan Association (Franklin) monthly sums representing one-twelfth of the projected annual real estate taxes and that the amount paid was in excess of the amounts required. The Bronheims also claim that Franklin used the excess as part of its general funds and failed to pay the Bronheims interest.[2]

Plaintiffs in each action move for an order determining that the action may be maintained as a class action, pursuant to Rule 23(c)(1), F.R.Civ.P. In each action plaintiffs claim to represent all mortgagors indebted to Lawrence and Franklin respectively, as to whom the said mortgagees caused to be maintained excessive escrow accounts on and after April 8, 1966, by demanding monthly payments for future real estate taxes in excess of amounts reasonably necessary for the payment of real estate taxes to the taxing authority; and/or by failing to credit the balance of funds remaining after payment of the current year's taxes to the next tax period. Plaintiffs claim that all Lawrence and Franklin mortgagors are required to make monthly payments for future real estate taxes, and that it is the policy of both mortgaging institutions to demand and receive payments in excess of the amount reasonably required for taxes. Plaintiffs further contend that it is the policy of the banks to use such excess for their own purposes, without paying mortgagors interest for the use of their money.

Plaintiffs claim the right to class action treatment under Rules 23(a) and 23(b)(3).[3]

---

other charges on real estate security." Section 545.6–11 Regulations.

2. The provision for payment of taxes, assessments and water rates is found in a mortgage extension agreement. The clause requires monthly payments based on estimates, made by Franklin, of the year's tax requirements. The excess claim is alleged with greater specificity in the Bronheims' complaint. The Bronheims claim that from 1966 to, and including 1970, the excess of monies held for future taxes ranged from $150 to $560. The Bronheims' complaint also contains a class action claim.

3. Rule 23(a) provides:
(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impractical;

(2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately [represent] the interests of the class.
Rule 23(b)(3) provides:
(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(3) the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to findings include:

Plaintiffs assert that the following issues of fact are common to all members of the class:

(a) whether the defendants overestimated the real estate taxes as to each mortgagor in view of the amount of escrow balance held in the mortgagor's escrow account; (b) whether defendants failed to credit their mortgagors with the excess escrow balance; (c) whether defendants wrongfully carried over excess balances month-to-month and year-to-year; (d) whether said practices violated applicable regulations; and (e) whether defendants used the mortgagors' funds in the operation of their business, and failed to pay interest on the excessive escrows.

Defendants, in opposition to the motion, suggest that the facts relative to plaintiffs' claims are peculiar to individual mortgagors, or common only as to some of the members of the proposed class. Defendants state, for example, that mortgage terms vary; differences in the escrow accounts reflect differences in the mortgage indebtedness; and demands of the different taxing authorities vary widely. Thus, Lawrence argues that each mortgage loan represents an "independent and separate transaction" and that "the management and maintenance of each mortgage is separate and independent."[4] Franklin holds 27,468 mortgages as of July 1, 1974. It maintains escrow accounts on 10,293 as of

that date.[5] Franklin shows that the escrow for taxes clause is not identical in all its mortgages.[6] Thirteen types of clauses are submitted. The differences alleged are: (1) some mortgages require the mortgagor to deposit sums of money for future payments of insurance and water rates, in addition to deposits for real estate taxes; (2) some mortgages give the mortgagee the option of applying the escrow fund to the monthly installments of interest and principal (3) some mortgages (as is true of the Bronheim extension agreement) provide that the mortgagee is not liable for the payment of interest on monies received for future taxes while others are silent on the issue; (4) some mortgages direct that payment of any excess "shall be credited by the mortgagee to subsequent payments" (effectively eliminating any claim made in this action); while others give the mortgagee the option of applying the excess to subsequent payments, or refunding it; and still others are silent on the right or obligation of the mortgagee (as in Bronheim); (5) some clauses describe the funds into which payments are made as escrow funds to be held in trust; and some are silent on this issue; and (6) some clauses provide that the escrow fund is held as additional collateral, while others say nothing about this matter.

Franklin further distinguishes the mortgages made the subject of these ac-

---

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

4. Lawrence quotes a letter from the Federal Home Loan Bank Board dated June 16, 1972, which indicates that Lawrence holds 788 conventional, 127 F.H.A. insured, and 86 V.A. insured mortgages with excess credit

balances. The conventional mortgages had excess credit balances totalling $114,360.86 (an average of $145.12 per mortgage). The F.H.A. and V.A. insured mortgages had average excess escrow balances of $180 and $150 respectively. The letter indicates that more than 4,000 mortgages carry a deficit in the escrow account.

5. Of the 27,468 mortgages, 10,882 are owned and serviced by Franklin, and 10,729 are serviced by agents of Franklin. Franklin has a participating interest in 5,857 which are serviced by others.

6. Some mortgages were purchased from other lending institutions. In the main, this fact accounts for the variation.

tions, from out-of-state mortgages (New Jersey). Franklin argues that dissimilar issues are presented since local law will apply to the interpretation of the escrow clause for future taxes.

The resolution of this motion requires that the court determine whether ". . . questions of law or fact common to the members of the class predominate over any questions affecting individual members . . .." This determination must reflect in part the resolution of problems involved in "the difficulties likely to be encountered in the management of a class action." (Rule 23(b)(3).[7]

In order to define the common issues of law and fact it is necessary to understand (as the court believes it does) what is irrelevant to the issues presented in plaintiffs' claim. The claim is not based on valuations fixed by various taxing authorities of the various municipalities; it is not based on the contract, or on the specific language of the escrow clauses. Plaintiffs' claim is likewise not based on interpretation of those clauses by local authorities in New Jersey or any other state. The claim assumes that Lawrence and Franklin have the right under the escrow clauses (and the interpretation of the escrow clauses) to collect monthly installments from mortgagors for the payment of future taxes. Plaintiffs claim that defendants collected sums over and above the reasonable requirements for taxes and that they used this excess money for their own use. Provision for the nature of the holding of such funds, *i. e.,* either as trust funds, or escrow funds is of no significance. The only issue is whether an excessive amount was unreasonably demanded, received and used by defendants. Mortgages which provided for mandatory application of the excess to future installment payments of principal and interest, or application of these funds at the option of the mortgagee would serve only to eliminate such mortgagors from the class; unless the defendants failed to abide by these provisions.[8] Similarly, the escrow clauses that provide for no interest are not significantly different from those that are silent as to interest. Plaintiffs' position is that the no interest provision refers only to such sums as are reasonably necessary to meet future tax payments.

█ The requirement that issues of law and fact predominate does not demand that only common issues be presented for class action treatment. The critical question is whether the individual issue will overwhelm and render the class action form valueless. *Partain v. First National Bank,* 59 F.R.D. 56, 59 (M.D.Ala.1973), *Dolgow v. Anderson,* 43 F.R.D. 472, 488 (E.D.N.Y.1968).

█ Similarly, the suggestion that defendants may interpose the defense of laches against one or more but not all members of the class would not bar class action treatment. If the court finds that some members are barred, they will be excluded from the class. However, this is not the time to make that determination. *Cohen v. District of Columbia Nat. Bank,* 50 F.R.D. 84, 90 (D.D.C.1972), *Richardson v. Hamilton International Corporation,* 62 F.R.D. 413, 419 (E.D.Pa. 1974).

█ The fact that individual damages are sought also presents no problem. The common issues of liability can be separated from the damage question, *City of Philadelphia v. American Oil Co.,* 53 F.R.D. 45, 67 (D.N.J.1971). It is doubtful that a trial on the damage issue is necessary since in all probability damages will be readily ascertainable from the defendants' records. *Landau v.*

---

7. Defendants do not seriously challenge plaintiffs' compliance with the conditions in Rule 23(a)(1-4) since it is apparent that the class is so numerous that joinder of all members is impracticable.

8. This form highlights the issue. Under such a clause the mortgagee has the obligation to apply the excess to the mortgage and the mortgagor thus receives the benefit of reducing the principal balance, or return of the excess for his use. Retention by the mortgagee for its use would give the mortgagor a right to interest from the user.

*Chase Manhattan Bank,* 367 F.Supp. 992, 998 (S.D.N.Y.1973).

■ The court certifies that the actions may be maintained as class actions. The class is defined as all mortgagors indebted to Lawrence of whom Lawrence demanded on and after April 8, 1966, and received monthly payments representing future taxes due on the mortgaged premises in excess of the amount reasonably necessary. The class is similarly defined and certified in the action against Franklin.

■ The court perceives no difficulty in the management of the class actions defined. If in the course of the proceedings problems are revealed that are not presently apparent, the court has the power to revoke class action status, *In re Hotel Tel. Charges,* 500 F.2d 86, 90 (9th Cir. 1974), or divide the class or classes into appropriate subclasses. Rule 23(c)(4).

Settle order in each action on not less than five days' notice by mail (or three days by personal service) on or before June 13, 1975.