JENNINGS OIL COMPANY, INC., et al., Plaintiffs,

v.

MOBIL OIL CORPORATION, Defendant.

No. 77 Civ. 1398 (HFW).

United States District Court, S. D. New York.

Oct. 18, 1978.

---

David Berger, Warren D. Mulloy, Eugene V. Lipkowitz, Philadelphia, Pa., and Mortimer B. Wolf, Norwick, Raggio, Jafee & Kayser, New York City, for plaintiffs; Berger & Montague, P. C., Philadelphia, Pa., of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant; by Sanford M. Litvack, Allan R. Freedman, Charles F. Rice, Mobil Oil Corp., New York City, of counsel.

## OPINION

WERKER, District Judge.

This action for alleged violations of certain antitrust and price control laws is brought against Mobil Oil Corporation ("Mobil") by three wholesale distributors of Mobil products on behalf of themselves and all others similarly situated. In the two motions presently before the Court, plaintiffs seek class action determination under Rule 23 of the Federal Rules of Civil Procedure and Mobil moves pursuant to Rule 12(b) thereof to dismiss count three of the complaint for failure to state a claim upon which relief can be granted.

### 1. Background

The plaintiffs are three independent distributors, or "jobbers," engaged in the business of distributing Mobil gasoline and other Mobil products to retail service station operators. Plaintiffs are "branded" distributors in that they, like many other jobbers in the industry, have contracted with one particular oil company—in this instance Mobil—to distribute that particular company's products. Jobbers buy gasoline wholesale from the oil companies and transport the gasoline in their own tank trucks for sale to the service station operators. In addition, many jobbers who are branded distributors also operate branded service stations, selling, e. g., Mobil gasoline under the Mobil trademark.

A large number of service station operators in the gasoline industry do not rely on jobbers but instead purchase gasoline wholesale in tank wagon lots directly from the oil companies for resale at retail to the public. Since the jobbers are bypassed in these situations, it would appear that the jobbers, including branded distributors, compete with the oil companies for the sale of gasoline to the service station operators. Gasoline is sold by the oil companies to the operators at a discounted price expressed in terms of cents per gallon off the tank wagon price charged the operators.

Plaintiffs contend that in March 1973 Mobil reduced the discount for the majority of the independent Mobil distributors in the United States at the same time that the tank wagon price of gasoline sold directly to operators was kept constant. The reduction in the discount therefore had the effect of increasing the price of gasoline charged jobbers, thus making the price at which they could offer gasoline to operators higher than the price at which Mobil could offer the product. In addition, plaintiffs allege that Mobil compelled its independent distributors to purchase tires, batteries, and accessories from Mobil in order to obtain gasoline, and that Mobil allocated markets among itself and its independent distributors to the disadvantage of the latter. Finally, plaintiffs charge Mobil with forcing motor oil distributors to boycott the independent Mobil distributors and with curtailing the amounts of gasoline available to the distributors for purchase.

As a result of these alleged predatory acts, plaintiffs filed the instant three-count complaint. Count one charges Mobil with

violating section one of the Sherman Act[1] by combining and conspiring with others to eliminate the independent Mobil distributors from competing with Mobil in the sale of gasoline to service station operators. Count two charges Mobil with violating section two of the Sherman Act[2] by its attempts to monopolize and its monopolization of interstate trade and commerce in the sale of Mobil gasoline. Finally, Mobil is charged in count three with violating the price control laws[3] by its reduction of the discount margin in March of 1973.

### 2. Mobil's Motion To Dismiss Count Three

■ Mobil's Rule 12(b)(6) motion[4] is based on the fact that plaintiffs did not specifically refer in their complaint to a regulation or order issued pursuant to the Economic Stabilization Act ("ESA"). Such an omission, Mobil alleges, resulted in a failure to state a claim upon which relief could be granted in that count three as drafted did not give fair notice of the nature of and grounds for plaintiffs' claims alleged therein.

Count three of the complaint reads as follows:

20. Jurisdiction is vested in this Court under 12 U.S.C. § 1904 n[ote], the Economic Stabilization Act, P.L. 92–210, December 22, 1971, as amended, P.L. 93–28, April 30, 1973, and the Emergency Petroleum Allocation Act, 15 U.S.C. § 755(a).

21. Paragraphs 1–19 are here realleged with the same force and effect as though said paragraphs were here set forth in full.

22. Said conduct constitutes a violation of 12 U.S.C. § 1904 n[ote].

Paragraph 21 incorporates by reference all of the prior allegations in the complaint, including paragraphs 12(a)(i) through 12(a)(iii), which refer to Mobil's alleged price-squeezing and reduction of the discount margin.

■ It would seem, therefore, that Mobil was given some general notice that plaintiffs were claiming some violation of the ESA as a result of the alleged price-squeezing and discount reduction. The Court finds, however, that such notice was not sufficient in that no reference is made in count three to a specific order or regulation promulgated under the ESA. Consequently, Mobil was not given fair notice of the specific grounds of the claim asserted against it in count three.

While the ESA clearly contemplates private suits for violations of the ESA or orders and regulations promulgated thereunder, *see* ESA § 210, 12 U.S.C. § 1904 note (1976), as amended and incorporated by the Emergency Petroleum Allocation Act, 15 U.S.C. § 755(a) (1976), it contains no substantive pricing provisions that could have been violated by Mobil. The mere citation to the ESA alone without reference to a substantive pricing provision of a specific

---

1. Section one of the Sherman Act provides in part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1 (1976).

2. Section two of the Sherman Act provides in part: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor . . . ." 15 U.S.C. § 2 (1976).

3. Plaintiffs contend that Mobil has violated the Economic Stabilization Act of 1970, which is published at 12 U.S.C. § 1904 note (1976).

4. Rule 12(b) provides in part that "[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted." Fed.R.Civ.P. 12(b). A strict interpretation of this language would lead to a conclusion that Mobil's 12(b)(6) motion is untimely, for it was not filed until after the answer had been interposed. Nevertheless, because the 12(b)(6) defense is one which is not waivable, Fed.R. Civ.P. 12(h)(2), and because the 12(b)(6) defense was asserted in Mobil's answer, the Court will consider the motion. *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1361, at 642–44 (1969).

order or regulation does not state a claim upon which relief can be granted.

Accordingly, Mobil's motion to dismiss count three of the complaint is granted. Count three is dismissed without prejudice; plaintiffs may amend their complaint within 30 days to specify the orders or regulations they allege Mobil violated.

### 3. Plaintiffs' Motion for Class Action Determination

Class certification is sought under subdivision (b)(3) of Rule 23, which requires a finding that

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

The proposed class consists of all present and former independent Mobil distributors, other than retail store accounts, who were in the business of distributing Mobil products in the United States from March of 1973 until the filing of the complaint, or for some shorter time period therein.[5] The plaintiffs are members of the proposed class, and thus have standing to seek class certification.

a. *Prerequisites to maintaining a class action.* Subdivision (a) of Rule 23 sets forth the four prerequisites to the maintenance of a class action. These prerequisites will be addressed briefly as they relate to the instant suit.

■ (1) *Numerosity.* Mobil does not contend that class action status should be denied for failure to meet the "numerosity" requirement of Rule 23(a)(1), nor could it given a proposed class of "at least hundreds of present and former distributors" of Mo-

bil products. I therefore find that the size of the proposed class makes joinder of all of its members impracticable.[6]

■ (2) *Common questions.* Likewise, there can be little doubt in the instant action that common questions of law and fact do exist. Plaintiffs' charges raise the common questions of the existence, scope, and effect of the alleged conspiracy. The monopolization claims are contingent upon a showing of monopoly power and an examination of the manner in which such power was acquired or maintained. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). These issues, along with others, are questions that are undoubtedly common to all the members of the putative class.

As Mobil has pointed out, however, individual questions are present in this suit as well. Whether the common questions predominate over these individual questions is an issue that is considered in the discussion of subdivision (b) of Rule 23 *infra.* For purposes of Rule 23(a)(2), I find that common questions of law and fact have been presented.

(3) *Typicality of claims.* Subdivision (a)(3) of Rule 23 requires that the claims of representative plaintiffs be typical of the claims of the class. Courts have found that this prerequisite is satisfied if the claims of the representatives and of the members of the putative class arise from the same transaction or legal theory, *see, e. g., Cullen v. New York State Civil Service Commission*, 435 F.Supp. 546, 559–60 (E.D.N.Y.), *appeal dismissed*, 566 F.2d 846 (2d Cir. 1977); *Weiss v. Drew National Corp.*, 71 F.R.D. 429, 431 (S.D.N.Y.1976), or if there is an absence of antagonism or conflicting interest between the representatives and absent class members. *Inmates of Attica Cor-*

---

5. Plaintiffs define the proposed class as "all Mobil distributors, other than retail store accounts, present and former, in the United States who have been subjected to similar business practices as described in paragraphs 10–12 herein." Complaint, at ¶ 6. Paragraphs 10–12 of the complaint set forth the unlawful acts allegedly engaged in by Mobil.

6. As Mobil itself has stated in an affidavit of one of its officers, the number of distributors to whom Mobil has sold gasoline in each of the last six years is approximately 1200, certainly a sufficient number to meet the numerosity requirement. Affid. of W. V. Butler, sworn to May 3, 1978, at ¶ 16.

rectional Facility v. Rockefeller, 453 F.2d 12, 24 (2d Cir. 1971); Cutner v. Fried, 373 F.Supp. 4, 11 (S.D.N.Y.1974).

The three named plaintiffs in this suit are presently independent Mobil distributors who claim injury from the alleged unlawful anticompetitive acts of Mobil. The damages purportedly sustained by the absent members of the proposed class are based on these same transactions—the discount reduction, the alleged conspiracy to eliminate independent distributors as competition, and the alleged monopolization and attempted monopolization. Moreover, Mobil has failed to show the existence of any antagonistic or conflicting interests between the named plaintiffs and the remaining members of the class.[7] The Court therefore finds that the claims of the representative plaintiffs are typical of the claims of the class.

■ (4) *Fair and adequate representation.* The defendant has not challenged the ability of plaintiffs' counsel to "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In any event, such a challenge would fail, for it is apparent that plaintiffs are represented by counsel with extensive experience in antitrust litigation. *See Professional Adjusting Systems of America, Inc. v. General Adjustment Bureau, Inc.,* 64 F.R.D. 35, 41 (S.D.N.Y.1974). Furthermore, as already noted, there has been no indication of the existence of a conflict of interest or question of collusion that would put into doubt the fairness of the representation. The Court thus finds that the interests of the class are fairly and adequately protected.

The prerequisites of subdivision (a) of Rule 23 having been met, the Court's inquiry turns to subdivision (b)(3).

■ b. *Predominance of common questions.* In order for an action to be maintained as a class action, Rule 23(b)(3) requires that common questions of law or fact predominate over questions affecting only individual members of the class. This requirement calls only for the predominance of common questions, and not exclusivity. As Chief Judge Mishler of the Eastern District has noted, "The critical question is whether the individual issue[s] will overwhelm and render the class action form valueless." *Milberg v. Lawrence Cedarhurst Federal Savings & Loan Association,* 68 F.R.D. 49, 52 (E.D.N.Y.1975).

As Mobil has ably pointed out, individual questions are indeed present in the instant suit.[8] However, Mobil has failed to demon-

---

7. Mobil contends that the claims of the plaintiffs are not typical of the claims of the class, and supports this contention, with respect to the market allocation issues, by references to depositions of the parties. Defendant's Memorandum in Opposition to Class Action Certification, at 20–25. The Court acknowledges that differences do exist among the claims of the individual named plaintiffs, differences which may extend to other members of the class. However, Mobil has not persuasively shown that these differences have created a conflict of interest between the named plaintiffs and the remaining members of the class. Moreover, the Court finds that these differences are minor in comparison to the bulk of the claims at issue, which are common to the named representatives and the class and which arise from common transactions. In addition, it should also be noted that the possibility that plaintiffs' individual claims may prove to be unfounded is not determinative, since plaintiffs may nevertheless succeed as representatives of the class. *Huff v. N.D. Cass Co.,* 485 F.2d 710, 712 (5th Cir. 1973); *Gilinsky v. Columbia University,* 62 F.R.D. 178, 181 (S.D.N.Y.1974).

8. For example, in order to establish their tying claim, plaintiffs would have to prove *inter alia* that Mobil conditioned the sale of gasoline on the purchase of tires, batteries and accessories. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Where there is no express tying agreement, as is apparently the case in the instant suit, the aggrieved party must show that sale of the tying product was conditioned on purchase of the tied product by proof of coercion, influence or persuasion, which in all likelihood must be done on an individual basis. *See Ungar v. Dunkin' Donuts of America, Inc.,* 531 F.2d 1211, 1218–19 (3d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976). The fact that individual proof may be required to make out a tying claim does not negate the soundness of permitting the suit to proceed as a class action. Moreover, plaintiffs have alleged, in addition to the existence of a tie-in, a *conspiracy* to impose a tie-in, which raises questions common to the entire putative class. *See Bogosian v. Gulf Oil Corp., supra,* 561 F.2d at 453.

strate that these individual issues are not predominated by common questions.

■ The plaintiffs are seeking relief for common grievances arising from a common nucleus of facts. They claim Mobil has engaged in a nationwide conspiracy to eliminate independent Mobil distributors from competing in the wholesale distribution of Mobil gasoline. Where an antitrust conspiracy has been at issue, the courts have tended to find that common questions predominated despite the existence of individual questions. *E. g., Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34 (S.D.N.Y.1977); *Barr v. WUI/TAS, Inc.*, 66 F.R.D. 109 (S.D.N.Y.1975); *Professional Adjusting Systems of America, Inc. v. General Adjustment Bureau, Inc.*, 64 F.R.D. 35 (S.D.N.Y.1974).

The issues in the *Barr* case are very similar to the ones at hand. The plaintiffs there sought class certification in their action for alleged violations of section one of the Sherman Act and, as in the instant suit, for violations of the Economic Stabilization Act of 1970. Despite the existence of individual questions, the court granted class certification and held:

The common threads running through each class member's claim are whether defendant unlawfully conspired to restrain trade or willfully overcharged its customers. These questions clearly predominate over any individual questions.

66 F.R.D. at 115. *See also Bryan v. Amrep Corp.*, 429 F.Supp. 313, 319 (S.D.N.Y.1977) ("The existence of a common plan, pursuant to which a common course of conduct occurred, *is* a class issue.").

These very same threads run through each class member's claim in the instant suit. Did Mobil unlawfully conspire to restrain trade by engaging and attempting to engage in predatory acts to eliminate the independent distributors as competition? Did Mobil violate the ESA by reducing the discount margin and thereby raising the price of gasoline for its independent distributors? These are the crucial questions with respect to counts one and three of plaintiffs' complaint, and clearly these are com-

mon questions that predominate over any individual ones.

Moreover, the monopolization and attempted monopolization charges set forth in count two of the complaint also raise significant common questions. For example, the monopolization claim raises the question of the relevant product market. Plaintiffs allege that the appropriate product market is Mobil gasoline, while Mobil contends that the relevant product market should encompass all brands of gasoline. Clearly, this is a question common to all the members of the putative class, the resolution of which will affect the entire class. *Accord, City of New York v. General Motors Corp.*, 60 F.R.D. 393 (S.D.N.Y.1973), *rev'd in part on other grounds*, 501 F.2d 639 (2d Cir. 1974).

In sum, I find that the common questions of law and fact predominate over individual ones. However, I note that any order certifying a class may be conditional and may be altered or amended at any time prior to a decision on the merits to restrict the class aspects of the action to particular issues or to create any necessary subclasses. Fed.R. Civ.P. 23(c)(1), (c)(2). Thus, if upon fuller development of the facts, it appears that the original determination on class action status was unsound, Rule 23 provides that the determination can be altered or amended before a decision on the merits. As the Second Circuit has noted, "It is this flexibility which indeed enables [the courts] to view liberally claims which assert a right to a class action . . . at the early stages of the litigation . . . ." *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

■ *c. Superiority of class method.* Subdivision (b)(3) of Rule 23 also requires the Court to find that a class action is superior to other available methods of adjudication before allowing a class action to proceed. Mobil contends that a class action would not be superior to other methods for the fair and efficient adjudication of this controversy on the grounds that individual questions would render the class form un-

manageable. Fed.R.Civ.P. 23(b)(3)(D). Specifically, Mobil asserts that the validity of the general release contained in its distributor contracts is a question to be resolved under state law, and since Mobil has distributors in some 47 states, the law of 47 states would therefore have to be considered.

The Court finds that this is not a sufficient reason to deny class certification. First, the release clause in the Mobil contracts is a uniform one and thus the language of the release provision is identical in the great majority of the contracts. Affid. of M. V. Butler, sworn to May 3, 1978, at ¶ 11. The issues raised are therefore common to the great majority of the members of the class. Second, should the release issue prove to be one which must be resolved under state law, class certification can be modified so that the validity of the releases can be determined on an individual basis. The common questions of the merits of the class claims can still be resolved on a class basis; the benefits derived from allowing plaintiffs to proceed with this suit as a class action are not defeated by the possibility that the release issue may have to be resolved individually. *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

The common questions raised herein represent the most significant aspects of the suit. These common questions can be resolved for all of the members of the class in a single adjudication, thus achieving economies of time, effort and expense. In view of the large size of the potential class, requiring each of the members of the putative class to seek relief individually for their common grievances would be extremely wasteful and inefficient. Accordingly, I find that the class form is superior to other forms of litigation.

### CONCLUSION

The requested class is conditionally approved; the action is to proceed as a class action under subdivision (b)(3).

Settle order on notice within 30 days.

SO ORDERED.