The CANADIAN ST. REGIS BAND OF MOHAWK INDIANS by Lawrence FRANCIS, Chief and Lloyd Benedict, Bruce Roundpoint, Joe Jacobs, John Oakes, Angus Bonaparte, Jr., David Benedict, Joyce Sharow, Robert Sunday, William Sunday, and John Lazore, Council Members, St. Regis, Quebec, Canada, HOM 1AO, Plaintiffs,

v.

The STATE OF NEW YORK, Hugh L. Carey, as Governor of the State of New York, Saint Lawrence Seaway Development Corp., David W. Oberlin, Administrator, St. Lawrence Seaway Development Corp., Niagara Mohawk Power Co., and Power Authority of the State of New York, Defendants.

No. 82–CV–1114.

United States District Court,
N.D. New York.

July 30, 1986.

See also 573 F.Supp. 1530.

Sonosky, Chambers, Sachse & Guido, Washington, D.C. (Reid Peyton Chambers, of counsel), Vaughn Aldrich, Hogansburg, N.Y., for plaintiffs.

Robert Abrams, Atty. Gen. for State of N.Y., Albany, N.Y. (Lew A. Millenback, Jeremiah Jocknowitz, of counsel), for State defendants.

Hiscock & Barclay, Syracuse, N.Y. (Jan R. Farr, of counsel), for defendant Niagara Mohawk.

Frederick A. Bush, Gen. Counsel, Massena, N.Y., for St. Lawrence Seaway Development Corp.

Jordan M. Newman, Asst. Gen. Counsel, New York City, for Power Authority of the State of N.Y.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., Glen R. Goodsell, Dept. of Justice, Gen. Litigation Section, Washington, D.C., for U.S.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

The Canadian St. Regis Band of Mohawk Indians brings this action to recover possession of certain islands in the St. Lawrence River. Plaintiffs also seek compensation from the federal defendants St. Lawrence Seaway Development Corporation and its administrator for flooding portions of their land without just compensation in violation of the Fifth Amendment to the United States Constitution. Presently before the court is the federal defendants' motion to dismiss plaintiffs' Fifth Amendment claim on the ground that it is time barred. For the reasons discussed below, the court grants the federal defendants' motion.

## BACKGROUND

Plaintiffs are a Canadian Indian tribe. In this action they seek a declaratory judgment that they own and are entitled to possess the Croil[1] and Barnhart Islands, which are located in the St. Lawrence River. According to plaintiffs, New York transferred plaintiffs' islands in violation of the Treaty of Ghent and the Indian Nonintercourse Act. Plaintiffs also seek trespass damages for the period of dispossession. Their third claim for relief alleges that the St. Lawrence Seaway Development Corporation and/or the New York State Power Authority took portions of Barnhart and Croil Islands in violation of the Fifth Amendment when defendants flooded the islands. Plaintiffs are also suing the administrator of the St. Lawrence Seaway Development Corporation in his official capacity. The complaint does not allege that he acted beyond the scope of his authority.

The St. Lawrence Seaway Development Corporation is a federal corporation chartered under the laws of the United States. 33 U.S.C. § 981 *et seq.* It has the power to sue and be sued in its own name. 33

---

1. The Croil Islands were formerly part of Croil Island or Baxter's Island. Croil Island was divided into several smaller islands when the river was dammed.

U.S.C. § 984(a)(3). In the 1950s the Corporation constructed the St. Lawrence Seaway Project. The project included the Robert Moses Power Dam, extending from the eastern end of Barnhart Island to the northern shore of the St. Lawrence River, and the Long Sault Spillway Dam, extending from the western end of Barnhart Island to the southern shore of the St. Lawrence River. The subsequent flooding that these dams caused submerged substantial portions of Barnhart and Croil Islands.

Plaintiffs filed the present action on October 15, 1982. The St. Lawrence Seaway Development Corporation and its administrator have moved to dismiss the claim against them as time barred. The federal defendants contend that plaintiffs' Fifth Amendment claim is in reality a suit against the United States under the Tucker Act, 28 U.S.C. § 1346(a)(2), and that the six-year statute of limitations of 28 U.S.C. § 2401(a) applies. According to the federal defendants, plaintiffs' claim against the Corporation is barred because it was filed more than six years after plaintiffs' land was flooded. Plaintiffs, however, argue that the "sue and be sued" clause in the Corporation's charter allows plaintiffs to sue the St. Lawrence Seaway Development Corporation on the same terms as a private litigant. They contend that no statute of limitations applies.

### DISCUSSION

A motion to dismiss will be granted only if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir.1985).

The court's review is confined to the face of the complaint and any documents incorporated in the complaint by reference. *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985). The court must assume that the facts in the complaint are true and draw all reasonable inferences in the plaintiffs' favor. *Dwyer,* 777 F.2d at 829; *Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49, 54 (2d Cir.1985).[2]

The issue before the court is whether plaintiffs' claim against the federal defendants is in fact against the United States and thus time barred. A suit, however captioned, is one against the government if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration." *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947); *Blackburn v. Goodwin,* 608 F.2d 919, 923 (2d Cir.1979). Courts will also examine whether the corporation or agency was functioning as an instrumentality of the federal government. *See Breitbeck v. United States,* 500 F.2d 556, 557–58 (Ct.Cl.1974).

Congress created the St. Lawrence Seaway Development Corporation in 1954, as a wholly owned federal corporation. 33 U.S.C. § 981 *et seq.* "The management of the Corporation [is] vested in an Administrator who [is] appointed by the President, by and with the advice and consent of the Senate...." 33 U.S.C. § 982(a). The President also appoints the Advisory Board. 33 U.S.C. § 982(b). The Corporation's activities are under the Secretary of Transportation's supervision, and its tolls and other charges are subject to the President's approval. 33 U.S.C. §§ 981, 988.

---

**2.** The federal defendants bring this motion pursuant to Federal Rule of Civil Procedure 12(b). Rule 12(b) provides that "a motion making any of these defenses shall be made before pleading if a further pleading is permitted." In the present action the federal defendants filed their answer before their motion to dismiss. Technically, defendants' Rule 12(b) motion is untimely. However, defendants' 12(b) defense is not one which is waivable, Fed.R.Civ.P. 12(h), and defendants have raised the statute of limitations defense in their answer. Under these circumstances, the court may consider the federal defendants' motion to dismiss. *Jennings Oil, Co. v. Mobil Oil Corp.,* 80 F.R.D. 124 (S.D.N.Y.1978). *See* 5 C. Wright and A. Miller, Federal Practice and Procedure § 1361 (1969). The court could also consider defendants' motion as a motion for a judgment on the pleadings under Federal Rule of Procedure 12(c). The court's review would be limited to the pleadings, and the court's determination would be the same.

Moreover, the Corporation's functions all fall directly within the federal authority over interstate commerce. *Breitbeck,* 500 F.2d at 558. Congress has also authorized the Corporation to acquire property by condemnation, among other means. 33 U.S.C. § 984(a)(8).

The relevant legislative history reveals that Congress created the Corporation "as an instrumentality of the United States" to construct, operate, and maintain the United States' portion of the St. Lawrence Seaway.[3] S.Rep.No. 441, 83rd Cong., 2d Sess., *reprinted in,* 1954 U.S. Code Cong. & Ad. News 2197, 2198. The Seaway was considered a vital element of the United States national security system. *Id.* at 2232. President Eisenhower in his State of the Union address, urged Congress to approve United States' participation in constructing the Seaway for both security and economic reasons. *Id.* at 2234.

The Court of Claims in *Breitbeck* considered whether the United States could be sued for a claim against the St. Lawrence Seaway Development Corporation. Employees of the St. Lawrence Seaway Development Corporation brought suit against the United States to recover wages owed to them by the Corporation. The United States moved to dismiss claiming that the Court of Claims had no jurisdiction because the suit was not one against the United States. The court held that because the Corporation was an agency of the United States accomplishing purely governmental purposes, a suit could be maintained in the Court of Claims against the United States. The court also noted that even though "Congress did attempt to make the agency self-supporting, in general, ... there are likewise substantial indications that this was not to separate it wholly from the Treasury." *Breitbeck,* 500 F.2d at 559. After analyzing the Corporation's contin-

ued dependence on federal funds, the Court of Claims concluded, "There is in short, no such clear cleavage between the Corporation's own funds and those of the United States that one could say Congress wished to cut the agency entirely loose from the Treasury or from appropriated funds." *Id.*

In the present action the St. Lawrence Seaway Corporation was acting under express authorization to build the dams in question. S.Rep. 441, 83rd Cong., 2d Sess., *reprinted in,* 1954 U.S. Code Cong. & Ad. News 2197, 2234. They were constructed for public navigation and power and for the national security, all governmental functions. Moreover, plaintiffs are asserting a Fifth Amendment claim.[4] They contend that the flooding caused by the dams constituted a taking of their property for public use without just compensation. A Fifth Amendment claim requires a public taking and must be asserted against a governmental entity. U.S. Const.Amend. V.; *See e.g., Penn Central v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). Because only the government may take property for public use, the Corporation had to be acting as the instrumentality of the government when it appropriated plaintiffs' land. Any recovery against the Corporation would also impact the public treasury because of the Corporation's financial dependence on Treasury funds. *See Breitbeck,* 500 F.2d at 559. Accordingly, plaintiffs' claim against the federal defendants is in fact one against the United States.

Plaintiffs' reliance on *Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), is misplaced. *Burr* involved a garnishment action against the Federal Housing Administration (FHA) where any recovery was re-

---

**3.** The St. Lawrence Seaway Project was constructed as a joint project with Canada.

**4.** The Fifth Amendment provides in part, "(N)or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. "The Fifth Amendment's guarantee that private property shall not be taken for a

public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

stricted to the FHA's corporate funds. The Supreme Court held:

> [W]hen Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued", it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue and be sued", that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

*Id.* 309 U.S. at 245, 60 S.Ct. at 490. *See also Reconstruction Finance Corp. v. Menihan Corp.*, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941). (Reconstruction Finance Corporation was liable for same costs as private litigant in unsuccessful litigation which was brought by the Corporation under its sue and be sued clause).

In contrast to *Burr* and *Menihan*, the St. Lawrence Seaway Development Corporation in the present action was not acting as a commercial entity but as the government appropriating land for public use. As noted above, recovery of "just compensation" would also impact public funds. Although sue and be sued clauses are generally interpreted liberally, the Corporation's sue and be sued clause only makes it amenable to the same judicial process as a private enterprise under like circumstances. *Burr*, 309 U.S. at 245, 60 S.Ct. at 490. A private enterprise could not be sued for violating the Fifth Amendment's takings clause.

The Supreme Court recently noted that land suits seeking damages equal to just compensation for an already completed taking of land are properly brought under the Tucker Act. *United States v. Mottaz*, —— U.S. ——, ——, 106 S.Ct. 2224, 2333, 90 L.Ed.2d 841 (1986); *See also Malone v. Tennessee Valley Authority*, 86 F.Supp. 961 (W.D.Ky.1949). In *Malone*, the TVA flooded the plaintiff's land by constructing a dam. The plaintiff sued the TVA to recover damages for destroying his property. The Tennessee Valley Authority Act, 16 U.S.C. § 831c(h), authorizes the TVA to take land by eminent domain in the name of the United States. Finding that "(t)he authority conferred upon the Tennessee Valley Authority to sue and be sued does not mean that the Authority can be sued where the United States only is the proper party," the *Malone* court held that if the plaintiff had a cause of action, it was against the United States under the Tucker Act and not against the Tennessee Valley Authority. *Malone*, 86 F.Supp. at 964.

In the present action the United States has not authorized Fifth Amendment takings suits against it under the Corporation's sue and be sued clause. The government's waiver of sovereign immunity for Fifth Amendment takings claims is found in the Tucker Act. *See United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Clark v. Library of Congress*, 750 F.2d 89, 103 n. 31 (D.C.Cir. 1984); *Duarte v. United States*, 532 F.2d 850, 852 n. 3 (2d Cir.1976). Because plaintiffs are in fact suing the United States, the St. Lawrence Seaway Development Corporation is entitled to the same defenses as the government.

> 28 U.S.C. § 2401(a) provides in part:
> Except as provided by the Contract Disputes Act of 1978 [5], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action accrues....

**5.** The Contract Disputes Act of 1978 is not applicable in the present action.

The six-year statute of limitations applies to suits for money damages brought under the Tucker Act. *Erceg v. United States,* 179 F.2d 510, 511 n. 2 (9th Cir.1950). *See Mottaz,* —— U.S. at ——, 106 S.Ct. at 2233.

Without consent, the United States is immune from suit, and the terms of its consent define the court's jurisdiction. *Id.* —— U.S. at ——, 106 S.Ct. at 2229; *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The Supreme Court has emphasized, "When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Mottaz,* —— U.S. at ——, 106 S.Ct. at 2229 *quoting Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983). Therefore, expiration of the time period denies the court jurisdiction, and the statute cannot be waived. *Walters v. Secretary of Defense,* 725 F.2d 107, 112 n. 12 (D.C.Cir.1983) *citing Finn v. United States,* 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (1887). Like the statute of limitations applied in *Mottaz,* the six-year limitations period of 28 U.S.C. § 2401(a) "reflects a clear Congressional judgment" that the national public interest requires barring stale claims against the United States.

Because the present action against the St. Lawrence Seaway Development Corporation and its administrator is really a suit against the United States, the six-year statute of limitations applies.[6] Plaintiffs' cause of action accrued prior to 1960 when their land was flooded. They filed their present action in 1982, more than six years after their claim accrued. Because plaintiffs are suing the Administrator of the St. Lawrence Seaway Development Corporation in his official capacity only, they do not allege that he acted outside the scope of his authority, and they are seeking monetary relief which would come from public funds, the Administrator enjoys the same sovereign immunity and defenses as the federal corporate defendant. *See Malone v. Bowdoin,* 369 U.S. 643, 647, 82 S.Ct. 980, 983, 8 L.Ed.2d 168 (1962); 14 C. Wright *et al,* Federal Practice and Procedure, § 3655 (1985).

Accordingly, the present suit against the federal defendants is time barred, and the federal defendants' motion to dismiss is granted.

IT IS SO ORDERED.

---

6. *Cf. County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (holding that Indian land claims not subject to any federal statute of limitations were presumptively exempt from state statutes of limitations). Unlike *County of Oneida,* the present action against the federal defendants is not an Indian land claim under federal common law but an action for damages against the United States under the Fifth Amendment to the Constitution. An express federal statute of limitations applies. *See Mottaz,* —— U.S. at ——, 106 S.Ct. at 2232 n. 10; *Loring v. United States,* 610 F.2d 649 (9th Cir.1979).