**William H. GREENFIELD, individually and as administrator of the Estate of Marcia D. Greenfield, deceased, Plaintiff,**

v.

**SUZUKI MOTOR CO. LTD., American Suzuki Motor Corporation, Whittle's Old Mystic Marina, Inc., and Whittle's Marina, Inc., Defendants.**

No. CV 91–0807.

United States District Court, E.D. New York.

Oct. 29, 1991.

Barton & Zasky by Alan M. Greenberg, New York City, for plaintiff William H. Greenfield.

Calinoff & Katz by Arnold I. Katz, New York City, for defendant American Suzuki Motor Corp.

O'Brien, McGarry, Murtagh & Mayr by James M. O'Brien, Rockville Centre, N.Y., for defendant Whittle's Marina, Inc.

MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff William H. Greenfield ("plaintiff"), individually and as Administrator of the Estate of Marcia D. Greenfield, the

deceased, brings this action against defendants Suzuki Motor Co. Ltd. ("Suzuki"), American Suzuki Motor Corporation ("American Suzuki"), Whittle's Old Mystic Marina, Inc. ("Whittle's"), and Whittle's Marina, Inc. ("Whittle's Marina"). Plaintiff asserts causes of action based on wrongful death and products liability. Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332. Currently before the Court is defendant American Suzuki's motion, joined in by defendant Suzuki, to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After a brief discussion of the background facts, the Court will turn to discuss the motion at bar.

## BACKGROUND

According to the complaint, defendants Suzuki and American Suzuki manufactured and distributed an outboard engine which was sold to defendant Whittle's and Whittle's Marina, the owners of Old Mystic Marina in Connecticut. According to plaintiff, defendant Whittle's sold a pleasure boat, including the aforementioned outboard engine, to Willie B. Hines, who shared equal ownership of the boat and its accessories with plaintiff. Plaintiff alleges that on May 31, 1989, employees of defendant Whittle's worked on the boat's engine, pursuant to plaintiff's complaints that the motor constantly stalled. The next day plaintiff William Greenfield and plaintiff's intestate Marcia Greenfield were anchored off Race Island, in the Long Island Sound, where Marcia Greenfield drowned.

Allegedly, the engine of plaintiff's boat did not have the necessary fuel line connecting the fuel tank and the engine, and as a result of this defect, the engine frequently stalled and was difficult to restart. Furthermore, plaintiff alleges that defendant Whittle's allowed the engine to be and remain in a state of ill repair prior to and after the sale of the engine to plaintiff.

According to plaintiff's complaint, the events which led to the drowning are as follows. On June 1, 1989, plaintiff William Greenfield and plaintiff intestate Marcia Greenfield were in the boat when the engine stalled off Race Island. Plaintiff alleges that while he was attempting to restart the stalled engine, the anchor line became entangled in the engine's lower underwater unit. Next plaintiff attempted to cut the anchor line, but was pulled into the water. Thereafter, while plaintiff intestate was attempting to rescue plaintiff, an onrush of water washed her inside the boat below deck. The boat then capsized, trapping the decedent underwater.

Plaintiff commenced this action on or about March 21, 1991. Plaintiff then sent two copies of the summons and complaint, unaccompanied by a Japanese translation, to defendant Suzuki, a Japanese Corporation, through the Central Authority in Japan pursuant to the Hague Service Convention, a treaty to which both the United States and Japan are parties. Plaintiff's request, which accompanied the documents, specified that "any method of service is acceptable under the Hague Convention Rules." Both the summons and complaint were delivered to a clerk of defendant Suzuki.

Defendants Suzuki and American Suzuki move for dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that the basis for dismissal of both the negligence and breach of warranty causes of action is the lack of proximate cause. Furthermore, defendants urge that the products liability cause of action should be dismissed because any alleged defect in the engine was not a substantial factor in causing the death of decedent. Finally, defendant Suzuki argues that the complaint should be dismissed for lack of personal jurisdiction based on improper service, in that it was allegedly not in accordance with the rules of the Hague Convention. For the reasons discussed below, defendants' motion is denied.

## DISCUSSION

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be accepted

as true. Fed.R.Civ.P. 12(b)(6); *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). Furthermore, the complaint must be considered in the light most favorable to the plaintiff. Therefore, because the Rule 12(b)(6) motion is directed only to the face of the pleadings, *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985), the task of a federal court in reviewing the sufficiency of a complaint is a limited one. The issue is not whether the plaintiff will ultimately prevail, but whether the party is "entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

▇ Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the requirements for pleading a claim in federal court and directs that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a). Accordingly, in a negligence cause of action, a detailed statement of the circumstances is not necessary, and a general allegation of negligence will be sufficient. *See generally* 5 Wright & Miller, *Federal Practice and Procedure* § 1249 at 315 (1990).

*Proximate Cause*

▇ In the case at bar, defendants contend that the complaint lacks an allegation of proximate cause, an essential element of any negligence suit. Generally, the question of proximate cause is to be decided by the finder of fact. *See Derdiarian v. Felix Contracting Co.*, 51 N.Y.2d 308, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 670 (1980). However, before the finder of fact can be presented with the issue of proximate cause, the Court must find that a prima facie case exists. *See, e.g., Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 429 N.Y.S.2d 606, 614–15, 407 N.E.2d 451, 458–60 (1980). Thus, plaintiff has the burden of making a prima facie showing of proximate cause to this Court in order to avoid dismissal pursuant to Rule 12(b)(6).

▇ The aforementioned burden can be met by plaintiff generally showing that defendant's negligence was a substantial cause of the events which produced the injury. However, plaintiff need not demonstrate that the precise manner in which the accident happened, or the extent of the injuries, was foreseeable. *See Derdiarian*, 434 N.Y.S.2d at 169, 414 N.E.2d at 670. As to the complaint herein, this Court finds that the burden has been met. Plaintiff has alleged within the complaint that American Suzuki and Suzuki's alleged negligence in the production and distribution of the outboard engine was a substantial link in the causal chain of events which caused the drowning to occur.

▇ This Court rejects defendants' contention that plaintiff's negligence in attempting to cut the anchor line, decedent's negligence in attempting to rescue her husband, or any "act of nature," were intervening causes which clearly broke the causal chain between defendants' conduct and the drowning. For any of these acts to qualify as superseding causes they would have to be unforeseeable in the normal course of events, or independent or far removed from defendants' conduct. *See e.g., Derdiarian*, 434 N.Y.S.2d at 169, 414 N.E.2d at 670; *Ventricelli v. Kinney System Rent A Car, Inc.*, 45 N.Y.2d 950, 411 N.Y.S.2d 555, 556, 383 N.E.2d 1149, 1150 (1978). Contrary to defendants' assertion, it cannot be said at this stage of the proceeding that Suzuki's and American Suzuki's alleged negligence was completely divorced from the accident by an intervening cause. Furthermore, that Suzuki and American Suzuki may not have foreseen the precise manner in which the boating accident occurred does not preclude liability as a matter of law where the general risk of a boating mishap and drowning were foreseeable. *See, Derdiarian*, 434 N.Y.S.2d at 169–70, 414 N.E.2d at 670–71 (noting that what is foreseeable for purposes of establishing intervening cause is generally a question for the finder of fact).

*Service of Complaint*

The Court next turns to address defendant Suzuki's additional ground for dismissal of the complaint against it based upon

noncompliance with the provisions of the Hague Convention, in that the equivalent Japanese translation was not included with the English version of the summons and complaint. Defendant asserts that due to the alleged noncompliance, service of process was improper, and therefore the Court lacks personal jurisdiction over it. For the following reasons, the Court rejects this argument.

The United States entered into the Hague Service Convention ("the Convention") in 1969, thereby undertaking a reciprocal treaty obligation towards those countries which have also adopted the Convention. Accordingly, since the Convention entered into force for Japan in 1970, all documents served between the United States and Japan which relate to civil or commercial cases must comply with the provisions of the Convention. The body designated to receive requests for service coming from other countries, and to process service according to the Convention provisions, is the Central Authority, pursuant to Article 2 of the Treaty. It is Article Five of the Convention which authorizes the Central Authority to require translation, and is the focus of the dispute in the case at bar.[1]

■ Where a country has exercised its Article Five right to require that the document to be served by the Central Authority be translated into the official language of the foreign country, courts have generally held that attempted service of an untranslated document is invalid. *See Service of Process Abroad: A. Nuts and Bolts Guide*, reproduced at 122 F.R.D. 63 (1989). The Government of Japan requires that when a document is served under paragraph 1 of Article Five it be translated. *See* Defendant's Memo. in Support at exhibit B. Moreover, the Japanese have spec-ified that if a request for service asks that service be in accordance with either subsection (a) or (b) of paragraph 1 of Article Five, and it is not accompanied by a translation, the authority will return the request to the requesting authority and will require a translation. *See id.* However, according to the information offered by the Japanese government with reference to its translation requirement, an exception to the rule *requiring translation is the "voluntary service"* of paragraph 2 of Article Five. *Id.* Accordingly, with respect to the case at bar, in which plaintiff specified, "any method of service is acceptable under the Hague Convention Rules," *see* Supplemental Aff. at exhibit C, the analysis turns on whether this request was properly read as one for voluntary service.

A textual analysis of Article Five, coupled with the facts of the case at bar, reveal that plaintiff's request was correctly deemed one for "voluntary service." "Consistent with the preamble of the Convention, the request form is designed to simplify and expedite service by providing the Central Authority with information in a standardized fashion." *Taylor v. Uniden Corp. of Am.*, 622 F.Supp. 1011, 1016 (E.D.Mo.1985). In the instant case, if the Central Authority of Japan had found the documents inadequate they could have returned the summons and complaint in an attempt to obtain a translation, pursuant to its own guidelines. The Central Authority did no such thing. It thus follows that the Central Authority interpreted plaintiff's request as one for voluntary service. Accordingly, plaintiff's summons and complaint did not need to be translated. Moreover, there was not any rejection of service by defendant to indicate that service was not voluntary. Indeed, defendant's clerk

---

**1.** Article Five, in pertinent part states:

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency—
(a) by method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory;
(b) by a particular method requested by the applicant, unless such method is incompatible with the law of the State addressed.

Subject to sub-paragraph (b) of the first paragraph of this article, the document may always be served by delivery to an addressee who accepts it voluntarily.

If the document is to be served under the first paragraph above the Central Authority may require the document to be written in, or translated into, its official language or one of its official languages.

*See* Defendant's Memo. in Support at exhibit A.

accepted service of the summons and complaint. Accordingly, Suzuki's argument that service was improper is without merit.

### CONCLUSION

For the reasons stated above, the Court finds that plaintiff effected service of the summons and complaint sufficient to satisfy the requirements of the Hague Convention, and that the complaint sufficiently alleges a prima facie statement of proximate cause. Accordingly, American Suzuki and Suzuki's motion for dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is denied.

SO ORDERED.