DONNA L. WOLFE, Individually and as Administratrix of the Estate of WILLARD R. WOLFE, Deceased, Respondent, v SAMARITAN HOSPITAL et al., Appellants, et al., Defendants.

Third Department, December 6, 1984

### APPEARANCES OF COUNSEL

*Donohue, Donohue & Sabo, P. C. (Kenneth G. Varley* of counsel), for Samaritan Hospital and others, appellants.

*Julien, Schlesinger & Finz (David Jaroslawicz* of counsel), for respondent.

*Carter, Conboy, Bardwell, Case & Blackmore (Forrest N. Case* and *Randall Ezick* of counsel), for Fremont C. Peck, Jr., and another, defendants.

*Maynard, O'Connor & Smith (John A. Murray* of counsel), for Albany Medical Center Hospital, defendant.

### OPINION OF THE COURT

MAHONEY, P. J.

This medical malpractice action arose out of the death of plaintiff's decedent on June 27, 1976 as a result of complications resulting from a subarachnoid hemorrhage. Decedent reported to the emergency room of Samaritan Hospital on May 26, 1976 complaining of certain symptoms, as a result of which the treating physician, Dr. Susan Hart, diagnosed a viral infection. Dr. Hart ordered blood tests but did not perform a neurological examination. Decedent was then ordered discharged from the hospital. While waiting for an ambulance to take him home, decedent collapsed, complaining of pain in his head. An examination was then performed by the director of the hospital's emergency department, Dr. Cyril Cameron. Dr. Cameron testified that he felt decedent should have been admitted to the hospital. However, decedent was discharged. The diagnosis of viral infection was admittedly incorrect. The next day, decedent sought treatment from Dr. James Gavin, a general practitioner, who correctly diagnosed his condition as a subarachnoid hemorrhage and immediately ordered him admitted to Albany Medical Center Hospital. On May 28, 1976, an angiogram was performed which revealed an aneurism. Decedent was treated by physicians at Albany Medical Center until his condition deteriorated and he eventually died on June 27, 1976.

Plaintiff commenced this medical malpractice action against numerous defendants including Hart, Cameron, Samaritan Hospital, Albany Medical Center and the treating physicians at Albany Medical Center. After a trial, the jury rendered a verdict finding liability on the part of Hart, Cameron and Samaritan Hospital, and finding no liability on the part of any of the other defendants. The jury found damages in the amount of $2,000,000 for wrongful death and $25,000 for pain and suffering. This appeal by the aggrieved defendants ensued.

█ Appellants[1] initially argue that plaintiff failed to prove that their negligence was the cause of decedent's death. Their theory is that the misdiagnosis merely delayed decedent's admission into a hospital for 24 hours and did not result in an aggravation of his condition or in any way cause his death one month later. Plaintiff offered the testimony of an expert in the field of neurology that the failure to properly diagnose decedent's condition and his discharge from the hospital caused bleeding to continue and actually aggravated his condition. The expert testified that the delay in treatment "reduced significantly [decedent's] chance for survival". Such expert testimony, if believed, clearly established the causation element of the wrongful death action. Thus, it cannot be said that plaintiff failed to prove that appellants' negligence was a contributing cause of decedent's death.

Appellants also contend that Trial Term erred in refusing to admit into evidence so much of a medical malpractice panel's report as dealt with them. A medical malpractice panel was convened, pursuant to section 148-a of the Judiciary Law, in connection with this action and, with regard to appellants, found: "It was the unanimous conclusion of the panel that [appellants] departed from the standard of care which should have been afforded the plaintiff's intestate. This departure permitted a continuation of symptomology and conscious suffering beyond that which would have otherwise been experienced. The panel further unanimously concluded that the negligence of [appellants] did not hasten or contribute to the death of the plaintiff's intestate."

Prior to trial, plaintiff moved to vacate this portion of the panel report on the ground that the panel exceeded its authority in reaching the issue of causation. Special Term denied the motion (*Wolfe v Samaritan Hosp.*, 113 Misc 2d 873). At the beginning of the trial, plaintiff renewed her application to prohibit the submission of this portion of the panel report to the jury for the same reasons advanced in her prior motion to vacate the panel report. Trial Term granted plaintiff's application.

█ Initially, we note that since the application to Trial Term was essentially a repeat of her motion to vacate, Trial Term was bound by the doctrine of law of the case to deny the application (see *Glover Bottled Gas Corp. v Local 282, IBT*, 89 AD2d 1007).[2]

---

1. For purposes of this decision, Hart, Cameron and Samaritan Hospital will be referred to as appellants.

2. It appears that plaintiff took an appeal from Special Term's order and that the appeal was dismissed by this court for failure to prosecute. However, such fact will not be deemed a waiver by plaintiff since the order was not

However, this is not dispositive of the appeal since this court is not bound by the doctrine of law of the case and may rule on the merits of plaintiff's application.

Plaintiff's position is that the function of the malpractice panel is to find "liability" or "no liability", not to determine causation. She contends that, the panel having found negligence on the part of appellants, it should have found "liability" and should not have gone on to causation. This argument demonstrates a fundamental misconception of the term "liability". A common-law negligence cause of action is comprised of distinct elements: negligence (duty and a breach thereof), causation (cause in fact as well as proximate cause) and damages. The term liability is not synonymous with negligence. Rather, liability comprises both negligence as well as causation, and a negligent actor will not be liable for damages unless the negligent conduct is a cause of such damages (see *Martin v Herzog,* 228 NY 164, 170). In subdivision 8 of section 148-a of the Judiciary Law, the Legislature authorized a medical malpractice panel, if unanimous, to make a recommendation on the "question of liability". It is clear, therefore, that a medical malpractice panel is authorized to reach the issue of causation. Had the Legislature intended otherwise, it could have authorized a panel to make a recommendation on the "question of negligence" or "question of malpractice". The authority of a medical malpractice panel to reach the issue of causation is particularly important in a case such as this where the issue of causation is a difficult one, dependent almost exclusively on expert medical testimony and evidence.

Since the panel's report was proper and unanimous, appellants had a right to have it admitted into evidence. The failure to do so is clearly prejudicial error warranting a new trial with regard to plaintiff's causes of action against appellants. Since it is not clear that the award for conscious pain and suffering was based solely on a "continuation of symptomology" as opposed to an aggravation of decedent's condition, an issue upon which the panel's report would be relevant, the award for conscious pain and suffering as well as that for wrongful death must be set aside.

KANE, CASEY, WEISS and LEVINE, JJ., concur.

Judgment modified, on the law, without costs, by reversing so much thereof as awarded damages as against Samaritan Hospital, Susan Hart and Cyril Cameron, matter remitted to Trial Term for a new trial with respect to those defendants, and, as so modified, affirmed.

appealable as of right (*Shaw v Oo H. Kyong,* 96 AD2d 1124).