Rita **DOOLITTLE, Sybil K. (Protheroe) Merrill and Cindy J. Blakeslee, Plaintiffs,**

**v.**

Anthony **RUFFO, individually and in his official capacity as Sheriff of Broome County; Supervisory Officers of the Broome County Sheriff's Department, including but not limited to the following persons who are sued individually**

and in their official capacities: Undersheriff Robert T. Natale, Captain Gerald D. Miller, Lieutenant George Van Winkle, Lieutenant William Hanafin, Sergeant Kenneth Gregory, Sergeant Kenneth Fetterman, and Sergeant Robert E. Strolka; the Broome County Sheriff's Department; the County of Broome; Deputy Robert Truesdell, individually and in his official capacity as President of Local 2012, Security and Law Enforcement Employees Council 82 and in his official capacity as deputy sheriff/corrections officer; Michael Semonco, President of Local 2012, a Labor Organization; and Joseph Puma, President of Security and Law Enforcement Employees Council 82, a Labor Organization, Defendants.

No. 88–CV–1175.

United States District Court, N.D. New York.

March 15, 1994.

Stone & Stone, Vestal, NY, for plaintiffs; Allen Stone and Michelle Stone, of counsel.

Joseph James Slocum, Broome County Atty., Broome County Attorney's Office, Binghamton, NY, for county defendants; Frank H. Heffron, Sr., Asst. County Atty., of counsel.

1. Although not a supervisory officer, plaintiffs sued Deputy Truesdell in his individual capacity and in his official capacity as a deputy sheriff/corrections officer as well as in his official capacity as a union official. As this court noted in its Memorandum–Decision and Order dated January 12, 1990, plaintiffs alleged that Truesdell "constantly teased plaintiff Doolittle, stating 'we won't back you in the blocks' and 'A (female) cell block is where you belong.'" See Memorandum–Decision and Order dated Jan. 12, 1990, slip op. at 3 n. 2 (citing plaintiffs' First Amended Complaint at ¶ 34). Although at that time the court dismissed plaintiffs' § 1983 claims against Deputy Truesdell in his official capacity as President of Local 2012, it did not dismiss these claims against him in his official capacity as a deputy sheriff or in his individual capacity. See id.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### INTRODUCTION

Sheriff Ruffo, several Supervisory Officers of the Broome County Sheriff's Department, the Broome County Sheriff's Department, and Broome County (hereinafter referred to collectively as the "County Defendants")[1] have moved for dismissal of plaintiffs' pendent state claims on the ground that they are insufficiently pled and for partial summary judgment with respect to plaintiffs' federal claims. In addition, the County Defendants have moved to preclude the expert testimony of Dr. Ruth Blizard concerning plaintiff Doolittle's claim of psychological trauma and to preclude any testimony by plaintiffs Merrill and Blakeslee concerning the psychological trauma they allegedly suffered as a result of the County Defendants' actions.

■ Plaintiffs oppose these motions in their entirety. In addition, they have cross-moved for summary judgment on two grounds. First of all, they assert that they are entitled to summary judgment because the County Defendants' justification for certain of their actions is pretextual.[2] Secondly, plaintiffs argue that the County Defendants are precluded from relitigating the issue of plaintiffs' continuous cell block assignment by the doctrine of collateral estoppel.

2. Plaintiffs filed their cross-motion for summary judgment in March 1993. In June 1993, the United States Supreme Court issued its decision in *Saint Mary's Honor Ctr. v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In *Hicks*, which must be applied retroactively, the Court held that the fact "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiffs' proffered reason of [sex] is correct. That remains a question for the factfinder to answer, ..." *Hicks*, —— U.S. at ——, 113 S.Ct. at 2756, 125 L.Ed.2d at 427. Thus, pursuant to *Hicks*, it is not sufficient grounds for granting plaintiffs' cross-motion that plaintiffs succeed in demonstrating that the County Defendants' justification for their actions is pretextual.

## BACKGROUND

The court will assume the reader's familiarity with the general background of this case and, therefore, will set forth only those facts that are pertinent to the disposition of the present motions. Plaintiffs are current and former sheriff's deputies in Broome County.[3] Their second amended complaint (hereinafter referred to simply as "the complaint") contains eight causes of action, only seven of which are the subject of the present motions.[4] Their eighth cause of action sets forth various pendent state claims alleging breach of contract, *prima facie* tort, negligence, and intentional infliction of emotional distress. The first six causes of action allege violations of 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964.[5]

Plaintiffs rely upon the same set of operative facts to support both their federal and state causes of action. In this regard, plaintiffs allege that from 1982 until the present, the County Defendants have engaged in an invidious pattern of sexual harassment, discrimination, and, since the filing of their complaints, retaliation against them. In their complaint, plaintiffs set forth specific examples of behavior which they contend support their claims. Among these allegations are the following:

(1) instances of verbal harassment, particularly in the lunchroom; *see* Complaint at ¶¶ 18, 54;

(2) denial of personal and family sick leave privileges that were regularly granted to male deputy sheriffs; *see* Complaint at ¶¶ 19, 35, 58, 75;

(3) denial of the assistance of inmate trustees to the female deputy sheriffs while at the same time granting such help to male deputy sheriffs; *see* Complaint at ¶ 20;

(4) denial of training for or assignments to "plum" jobs while being assigned extra duty to the more difficult or menial tasks; *see* Complaint at ¶¶ 21, 23, 25, 36, 55, 56;

(5) requirement that female deputy sheriffs conduct full strip searches of male inmates even when male deputy sheriffs were available to conduct such searches; *see* Complaint at ¶¶ 22, 53;

(6) stationing of female deputy sheriffs in the female cell block without the ability to call for assistance if a dangerous situation arose; *see* Complaint at ¶ 24;

(7) requirement that female deputy sheriffs bid separately from male deputy sheriffs for shifts; *see* Complaint at ¶ 16;

(8) arbitrary and capricious denial of bereavement leave; *see* Complaint at ¶ 76;

(9) permanent or continuous assignment to the same cell block or to the same shift; *see* Complaint at ¶¶ 73, 74.[6]

Although it is entirely proper to rely upon the same set of operative facts to support multiple causes of action, the manner in which plaintiffs chose to draft their complaint leaves much to be desired. As the court noted in its January 12, 1990, Memorandum–Decision and Order in reference to plaintiffs' first amended complaint,

[t]he complaint is a confusing document. When making allegations the plaintiffs' [sic] often assert broadly that "the defendants" did such and such, without differen-

---

**3.** As far as the court can ascertain, Ms. Doolittle was employed by the Sheriff's Department from March 1982 until March 1989. Ms. Blakeslee was so employed from February 1984 until March 1989. Ms. Merrill commenced her employment with the Sheriff's Department in February 1984 and remains so employed.

**4.** The seventh cause of action pertains exclusively to the Union Defendants who are not parties to the present motions.

**5.** These first six causes of action are divided into three sets of two, each pair pertaining to a particular plaintiff. In this regard, the first and second causes of action apply to Ms. Doolittle, the third and fourth causes of action apply to Ms.

Merrill, and the fifth and sixth causes of action apply to Ms. Blakeslee. In each set of claims, one cause of action is based upon alleged violations of Title VII and the other cause of action is based upon alleged violations of § 1983. In addition, each cause of action incorporates by reference all the allegations contained in previous causes of action as well as the general allegations set forth in the "Factual Allegations" section of the complaint.

**6.** Some of these practices have been discontinued. Nonetheless, they serve as examples of the types of activities that plaintiffs contend support a finding that the County Defendants subjected them to a pattern of sexual harassment, discrimination, and retaliation.

tiating between [sic] the many defendants. For some reason counsel for the plaintiffs' [sic] also decided to draft the complaint so that every previous allegation is fully incorporated into every subsequent cause of action—making it difficult to figure out what is alleged against whom. Moreover, a number of independent legal claims are often asserted within a cause of action. **Such drafting makes responsive pleading most difficult and invites motion practice which might otherwise be unnecessary.**

*See* Memorandum–Decision and Order dated Jan. 12, 1990, slip op. at 4 n. 3 (emphasis added).

Plaintiffs' second amended complaint has not cured these drafting defects. Thus, once again the County Defendants and the court find themselves with the unenviable task of not only trying to determine which allegations pertain to which defendants but also trying to ascertain the exact nature of plaintiffs' claims. Despite this confusion, however, the court will attempt to resolve the issues raised by the present motions.

## DISCUSSION

### I. Motion to Preclude Testimony Concerning Psychological Trauma

#### A. Expert Testimony

 As with other aspects of this case, discovery has not been free of problems. This particular motion concerns Ms. Doolittle's allegations that she suffered psychological trauma as a result of the acts of the County Defendants. Dr. Blizard, a psychologist, began treating Ms. Doolittle for this psychological trauma in April 1989. *See* Slocum Affidavit, Exhibit 2 (Letter of Dr. Blizard dated September 11, 1992). In July 1992, the County Defendants secured a medical release from Ms. Doolittle which they forwarded to Dr. Blizard requesting all medical records in her possession regarding her treatment of Ms. Doolittle. *See id.* at ¶¶ 4, 5. Despite numerous written and telephonic requests over the next three months for compliance with this release, Dr. Blizard did not respond. *See id.* at ¶ 6. As a result, on October 1, 1992, Attorney Slocum sent a letter directly to Dr. Blizard in which he stated that "[i]f the records are not received, I will have no choice but take [sic] appropriate action. The Federal Rules of Procedure authorize me to serve a subpoena duces tecum requiring you to submit to questioning under oath and to produce all your records." *See id.* at ¶¶ 7, 8 and Exhibit 1 (Letter from Slocum to Dr. Blizard dated October 1, 1992). On October 7, 1992, the County Defendants received a report from Dr. Blizard but not the records they had requested. *See id.* at ¶ 9.

On October 6, 1992, the County Defendants served a demand for an independent medical examination of Ms. Doolittle by Dr. Wolkoff which was to take place on October 19, 1992. *See* Slocum Affidavit at ¶ 12. At the request of plaintiffs' counsel, the appointment was rescheduled for October 27, 1992. *See id.* at ¶ 13. Thereafter, plaintiffs' counsel advised the County Defendants that Ms. Doolittle would not attend the examination. *See id.* at ¶ 14. As a result of this refusal, the County Defendants, by letter dated October 29, 1992, sought and obtained an order directing Ms. Doolittle to submit to an examination by Dr. Wolkoff on November 11, 1992, four days before the cutoff for discovery in this matter. *See id.* at ¶¶ 15, 16.

Ms. Doolittle met with Dr. Wolkoff on November 11, 1992. On November 17, 1992, the County Defendants spoke with Dr. Wolkoff and learned that his examination was incomplete and that Ms. Doolittle had indicated to him that she had been receiving treatment from Dr. Blizard for matters such as low self-esteem and obesity which she acknowledged were not related to her claims against the County Defendants. *See* Slocum Affidavit at ¶ 17. According to the County Defendants, this was the first time they had any knowledge that Dr. Blizard had been treating Ms. Doolittle for anything other than the psychological trauma she allegedly suffered as a result of the acts of the County Defendants. *See id.* Dr. Wolkoff also noted that he would need to have access to any and all reports or notes that Dr. Blizard had taken during the three plus years that she had counseled Ms. Doolittle and would need to see Ms. Doolittle again in order to draw

any conclusions. *See id.*, Exhibit 3 (Affidavit of Dr. Wolkoff at ¶ 11).

The County Defendants contend that they did not immediately seek an extension of the discovery deadline because on November 8, 1992, plaintiffs had requested a settlement conference which was scheduled for November 24, 1992. *See id.* at ¶ 22. After this conference, which proved to be unsuccessful, the County Defendants moved on December 8, 1992, to extend discovery to depose Dr. Blizard and to return Ms. Doolittle to another appointment with Dr. Wolkoff. *See id.* at ¶ 28. The court denied this request. *See id.* at ¶ 29. Given these circumstances, the County Defendants argue that they are being

> [d]eprived of an opportunity to seek an independent evaluation and if necessary, put evidence before the trier of fact of an absence of psychological trauma attributed to the alleged defendant's [sic] conduct; the County of Broome, the Sheriff's Department and the deputies in their official and individual capacities, are further prejudiced by their opportunity to review the plaintiff's evidence of psychological trauma before trial and will thereby be precluded from preparing an effective cross-examination of Dr. Blizzard [sic].

*See* Slocum Affidavit at ¶ 31.

Plaintiffs do not dispute the County Defendants' assertion that their first knowledge that Dr. Blizard was treating Ms. Doolittle for problems other than those caused by the County Defendants resulted from their conversation with Dr. Wolkoff on November 17, 1992. Nor do they deny the fact that Dr. Blizard's response to the County Defendants' request for medical records was at best late, if not entirely unresponsive. Their only response to the County Defendants' request is that they should not be held responsible for the County Defendants' failure to depose Dr. Blizard during discovery or to request an extension of time for the same. *See* Plaintiffs' Memorandum of Law at 41–42.

Neither party is entirely blameless in this dispute. Certainly, the County Defendants could have conducted discovery in a more expeditious manner. Nevertheless, considering the County Defendants' unsuccessful and good faith efforts to obtain Dr. Blizard's

medical records in an attempt to avoid the time and expense of a formal deposition, the initial refusal of Ms. Doolittle to submit to Dr. Wolkoff's examination, and the new information obtained as a result of Dr. Wolkoff's examination of Ms. Doolittle, plaintiffs must be held partly to blame for the present situation. Under these circumstances, therefore, the court will not preclude Dr. Blizard from testifying at trial concerning her treatment of Ms. Doolittle for psychological trauma. However, allowance of such testimony is contingent upon the parties' compliance with the following instructions. Plaintiffs are to notify the court in writing within 15 days of the date of this memorandum-decision and order whether or not they intend to have Dr. Blizard testify at trial. If they do so intend, the court will reopen discovery for 90 days, limited to the issue of Dr. Blizard's treatment of Ms. Doolittle. During this period, the parties are to schedule the deposition of Dr. Blizard at which time she will produce the medical records concerning her treatment of Ms. Doolittle, as the County Defendants have requested. Once this deposition is complete, the parties are to schedule Ms. Doolittle for another examination with Dr. Wolkoff. **Only** if these steps are completed within the time allowed will plaintiffs be permitted to introduce any evidence at trial concerning Dr. Blizard's treatment of Ms. Doolittle for psychological trauma.

*B. Plaintiffs' Own Testimony Regarding Their Psychological Injuries*

The County Defendants seek to have the court preclude plaintiffs Blakeslee and Merrill from offering any testimony about the psychological injuries they allegedly suffered as a result of the County Defendants' actions because they have failed to identify any psychologist or psychiatrist from whom they have sought treatment for such injury. *See* County Defendants' Memorandum of Law at 27. Furthermore, the County Defendants assert that absent such expert testimony, plaintiffs' claims of such injury must be dismissed as a matter of law. *Id.*

■ This request need not detain the court for very long. It is beyond peradventure that plaintiffs may not produce experts

to testify on their behalf concerning their alleged psychological injury without identifying such experts when requested to do so. Nevertheless, because there is no indication that Ms. Blakeslee and Ms. Merrill intend to call any such expert witnesses, there does not appear to be any need for the present motion. With respect to the second part of the County Defendants' motion, however, there is no support for the proposition that absent such expert testimony, plaintiffs may not proceed with their claims of psychological injury. Plaintiffs may offer their own testimony to demonstrate that they suffered psychological injury. Moreover, if credible, such evidence may be sufficient to support an award of damages for pain and suffering if the County Defendants' conduct is found to have violated plaintiffs' constitutional rights.[7] *See Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 581 (2d Cir.1989); *see also Lenihan v. City of New York*, 636 F.Supp. 998, 1017 (S.D.N.Y.1985) ("[a] claim of damages for mental anguish and humiliation may be established through the testimony of the complainant alone, ..." (citation omitted)). Accordingly, the court denies the County De-

fendants' motion to preclude the testimony of Ms. Blakeslee and Ms. Merrill concerning the alleged psychological injury they suffered as a result of the County Defendants' actions.

## II. Plaintiffs' Pendent State Claims

### A. Standard of Review

The County Defendants assert that plaintiffs' pendent state claims should be dismissed because "[t]he plaintiffs are leaving it to the court and the defendants to search through a large jumble of prior allegations to 'find the factual and legal basis of the pendent claims.'" *See* County Defendants' Memorandum of Law at 24 (citing this court's January 12, 1990, Memorandum–Decision and Order, slip op. at 12–13 (dismissing these same pendent state claims against the Union Defendants for this reason)). In response, plaintiffs assert simply that these "[c]laims are legally sufficient under New York Law."[8] *See* Plaintiffs' Memorandum of Law at 40 (citations omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, the court must accept the materi-

---

7. Such recovery, of course, is limited to plaintiffs' § 1983 causes of action. Plaintiffs may not recover damages for pain and suffering on their Title VII causes of action because Title VII does not allow for recovery of compensatory or punitive damages. *See Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 581 (2d Cir.1989).

8. The four cases that plaintiffs cite in support of their position that their state law claims are legally sufficient under New York law contain no more than conclusory statements about *prima facie* torts and claims of intentional infliction of emotional distress. For example, in *Coley v. Arnot Ogden Memorial Hospital*, 107 A.D.2d 67, 485 N.Y.S.2d 876 (3d Dep't 1985), the issue was whether the plaintiff's complaint was barred by the exclusivity provisions of New York's Workers' Compensation Law and, if not, whether her common-law tort allegations were sufficient to withstand a motion for summary judgment. The only mention that the court made concerning a *prima facie* tort was the statement that "[m]alevolence was not the sole motive for defendant's act and precludes recovery by plaintiff under the theory of prima facie tort." *Coley*, 485 N.Y.S.2d at 879 (citations omitted). Likewise, in *De Marco v. Federal Ins. Co.*, 99 A.D.2d 114, 472 N.Y.S.2d 464 (3d Dep't 1984) and *Burlew v. American Mutual Ins. Co.*, 63 N.Y.2d 412, 482 N.Y.S.2d 720, 472 N.E.2d 682 (1984), the issue was whether the plaintiff's tort claim was precluded by

New York's Workers' Compensation Law. Both courts concluded that intentional torts were not so precluded. Finally, the only case that plaintiffs cite which arguably has any significance for the present case is *Belanoff v. Grayson*, 98 A.D.2d 353, 471 N.Y.S.2d 91 (1st Dep't 1984), in which the court addressed a claim of intentional infliction of emotional distress. In that case, the court stated that

> [t]he law does not provide a remedy against all activity which an individual may find annoying, but where severe mental anguish is inflicted through a deliberate and malicious campaign of harassment, a remedy is available (citation omitted). The conduct complained of must exceed all bounds usually tolerated by society (citation omitted) and the misconduct must be of the most egregious nature (citation omitted).

*Belanoff*, 471 N.Y.S.2d at 94.

Plaintiffs, however, make no effort to apply *Belanoff* to the facts of this case. Thus, just as plaintiffs have left it to the court to review the entire complaint to ascertain the legal and factual bases for their pendent state claims, they also have left it to the court to undertake its own independent research to determine the elements of each of these claims and to ascertain whether or not plaintiffs sufficiently pled each of these elements so that they can withstand the County Defendants' motion to dismiss.

al facts alleged in the complaint as true.[9] *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991) (citing e.g., *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam)); *Greenfield v. Suzuki Motor Co.,* 776 F.Supp. 698, 700–01 (E.D.N.Y.1991). A fact is material when its resolution would "[a]ffect the outcome of the suit under the governing law." *General Elec. Co. v. New York State Dep't of Labor,* 936 F.2d 1448, 1452 (2d Cir.1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986)). Moreover, a court should not dismiss a plaintiff's complaint "[u]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Easton,* 947 F.2d at 1015 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84–85 (1957) (other citation omitted)); *see Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988). In making this evaluation, the court must consider the complaint in the light most favorable to the plaintiff. *Greenfield,* 776 F.Supp. at 701. As such, the court's task in reviewing the sufficiency of the complaint is limited. *Id.* "The issue is not whether the plaintiff will ultimately prevail, but whether the party is 'entitled to offer evidence to support the claims.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974)).

As a preliminary matter, the court notes that in its January 12, 1990, Memorandum–Decision and Order it addressed the Union Defendants' Rule 12(b)(6) motion with respect to these same pendent state claims in terms of Rule 8(a)'s requirement that a pleading contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief." *See* Memorandum–Decision and Order dated Jan. 12, 1990, slip op. at 12. Addressing the allegations contained in plaintiffs' **first** amended complaint, the court noted that

[t]he plaintiffs' *amended* complaint simply lists the titles of five state causes of action and instructs the court and the defendants to search one hundred and four (104) paragraphs of the amended complaint in order to find the factual and legal basis of these claims. Amended Complaint par. 105.... Even under the liberal pleading requirements of the Federal Rules of Civil Procedure these claims are insufficiently stated to withstand a motion to dismiss. The court's decision might well be different if this was a *pro se* complaint, but more must be expected from an attorney at law. *See generally Salahuddin v. Cuomo,* 861 F.2d 40, 41–43 (2d Cir.1988). Therefore, the plaintiffs' pendent state claims against the Union Defendants are dismissed.

*See* Memorandum–Decision and Order dated Jan. 12, 1990, slip op. at 12–13.

Subsequent to this decision, plaintiffs sought and were granted permission to file a second amended complaint, the one presently before the court. The County Defendants argue that plaintiffs' second amended complaint adds "[n]othing of substance, except for allegations of damage." *See* County Defendants' Memorandum of Law at 24. They go on to explain that

[i]nstead of incorporating each and every prior allegation of the complaint, as before, the eighth cause of action of the second amended complaint incorporates four groups of prior paragraphs (15–28, 30–41, 53–61, and 73–79). However, this provides no more focus than the earlier all-encom-

---

9. Although the County Defendants make no mention of any particular rule, their motion to dismiss plaintiffs' pendent state claims appears to be made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b) provides that "[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted." Fed.R.Civ.P. 12. In the instant case, the County Defendants filed their answer before the present motion to dismiss. Technically, therefore, the County Defendants' 12(b) motion is untimely. However, courts have considered such motions made after service of a responsive pleading where, as here, the defense has been included in the answer. *See* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361 (1990); *Canadian St. Regis Band of Mohawk Indians v. New York,* 640 F.Supp. 203, 205 n. 2 (N.D.N.Y.1986) (McCurn, J.); *Bowen v. Pan Am. World Airways, Inc.,* 474 F.Supp. 563, 566 (S.D.N.Y.1979). Likewise, this court will entertain the present motion as though it were a timely 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

passing incorporation, because these four groups of paragraphs contain every single allegation that can in any sense be considered an allegation of fact. Once again the plaintiffs are leaving it to the court and the defendants to search through a large jumble of prior allegations to "find the factual and legal basis of the pendent claims." *See* County Defendants' Memorandum of Law at 24 (citing Memorandum–Decision and Order dated Jan. 12, 1990, at 12).

The court agrees with the County Defendants that plaintiffs' second amended complaint has not cured the defects cited by this court in its previous memorandum-decision and order. By stretching the liberal pleading requirements to their limit, plaintiffs have, arguably, satisfied Rule 8(a)'s requirement. Nonetheless, for the reasons stated below, the court concludes that plaintiffs' complaint is insufficient to withstand the County Defendants' motion to dismiss.

### B. Breach of Contract [10]

Under New York law, "[a] plaintiff must prove four elements in order to sustain a breach-of-contract claim: formation of a contract between the parties, performance by plaintiff, breach by the defendant, and resulting damages to plaintiff." *Ben Mayor v. Jean Philippe Fragrances, Inc.*, 92 Civ. 6217, 1994 WL 9684, *2, 1994 U.S. Dist. LEXIS 89, *4 (S.D.N.Y. Jan. 10, 1994) (citing *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220, 1227 (S.D.N.Y.1991)). As to the first element, no one disputes the existence of a collective bargaining agreement between plaintiffs' employer and its union. Nowhere in their complaint, however, have plaintiffs stated that they have performed under the contract. Moreover, missing from plaintiffs' complaint is any well-pled

allegation from which the court can infer that the County Defendants breached this contract. Therefore, having failed to plead essential elements of their breach of contract claim, plaintiffs cannot withstand the present motion. Accordingly, the court grants the County Defendants' motion to dismiss plaintiffs' pendent state law breach of contract claim.

### C. Prima Facie Tort [11]

Under New York law, "[t]he elements of prima facie tort are: (1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Curti v. Girocredit Bank*, 93 Civ. 1782, 1994 WL 48835, *4, 1994 U.S. Dist. LEXIS 1473, *13 (S.D.N.Y. Feb. 10, 1994) (citing *Twin Lab., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir.1990)). Moreover, " '[t]he touchstone [of prima facie tort] is "disinterested malevolence", meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm.' " *Id.* (quoting *Twin Lab., Inc.*, 900 F.2d at 571 (citing in turn *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459, 467 (1983))). In addition, "[u]nder New York law, in order to plead a claim for prima facie tort, plaintiffs must allege special damages, and 'round sums without any attempt at itemization are not sufficient....' " *Gay v. Carlson*, 89 Civ. 4757, 1992 WL 309819, *9, 1992 U.S. Dist. LEXIS 15799, *31 (S.D.N.Y. Oct. 15, 1992) (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1088 (S.D.N.Y.1988)). These " '[s]pecial damages must be alleged with sufficient particularity to identify actual loss-

---

10. With respect to this claim, plaintiffs allege that "[a]s a direct and proximate result of the breaches of the Collective Bargaining Agreement by the above named defendants as herein before alleged and intentional wrongdoing by each of the defendants as alleged herein before, plaintiff [sic] have been damaged in that plaintiffs have sustained sever [sic] and continuous emotional distress. Furthermore, plaintiffs have been damaged by reason of losing seniority and fringe benefits and back pay." *See* Complaint at ¶ 102.

11. Plaintiffs set forth the basis of this claim in ¶ 103 of their complaint which provides that [b]y reason of the arbitrary, invidious, discriminatory and malicious acts of the defendants as hereinbefore alleged defendants have intentionally inflicted harm upon plaintiffs, without excuse or justification, by acts or series of acts that would otherwise be lawful.
*See* Complaint at ¶ 103.
Plaintiffs then purport to set forth the special damages they sustained as a result of the County Defendants' actions in ¶ 104.

es.' " *Id.* (quoting *El Greco Leather Prods. Co. v. Shoe World, Inc.,* 623 F.Supp. 1038, 1045 (E.D.N.Y.1985), *aff'd in part and rev'd on other grounds,* 806 F.2d 392 (2d Cir.1986), *cert. denied,* 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987)).

 In the present case, plaintiffs cannot withstand the County Defendants' motion to dismiss because they have failed to plead, with the required particularity, the existence of special damages. In ¶ 104 of their complaint, plaintiffs do no more than set forth the alleged injuries they have suffered as a result of the County Defendants' actions. For example, subparagraph (a) provides merely that "[d]ue to plaintiff Blakeslee's marital personal difficulties working the late shift as a result of the unfair shift bidding, she is no longer employed as a deputy sheriff/corrections officer and she is divorced. She has suffered financial loss due to unemployment." *See* Complaint at ¶ 104(a). Not only does this paragraph fail to specify the alleged value of these injuries, but in their WHEREFORE clause plaintiffs do not distinguish among the damages suffered as a result of their *prima facie* tort claim and those resulting from their negligence, intentional infliction of emotional distress, and breach of contract claims. Under these circumstances, the court must conclude that plaintiffs have failed to plead an essential element of their claim of *prima facie* tort. Accordingly, the court grants the County Defendants' motion to dismiss this claim.

### D. Intentional Infliction of Emotional Distress[12]

 Under New York law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Murphy v. American*

---

**12.** Plaintiffs set forth their claim for intentional infliction of emotional distress in ¶ 105 of their complaint which provides in pertinent part that [t]he acts and conduct of defendants, as hereinafter [sic] alleged were so extreme, outrageous, atrocious, and utterly intolerable so as to go beyond all possible bounds of decency that defendants intentionally or recklessly caused plaintiffs to suffer severe emotional distress and humiliation. *See* Complaint at ¶ 105.

---

*Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983) (citing Restatement of Torts, Second § 46, subd. [1] ). The court in *Murphy* went on to state that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement of Torts, Second § 46, subd. [1], comment d).

 Even assuming that all of plaintiffs' allegations are true, the court finds nothing in the complaint so egregious that it would rise to the level necessary to sustain a cause of action for intentional infliction of emotional distress. Accordingly, the court grants the County Defendants' motion to dismiss this claim.

### E. Negligence[13]

 Under New York law, a common law negligence cause of action "[i]s comprised of distinct elements: negligence (duty and a breach thereof), causation (cause in fact as well as proximate cause) and damages." *Wolfe v. Samaritan Hosp.,* 104 A.D.2d 143, 146, 484 N.Y.S.2d 168, 171 (3d Dept.1984). The court need not devote much time to this claim because plaintiffs have failed to plead any of the elements necessary to maintain a negligence cause of action. Accordingly, the court grants the County Defendants' motion to dismiss this claim.

### III. Plaintiffs' Federal Causes of Action

#### A. Summary Judgment Standard

 Since 1986, the standards that govern a court's analysis of a summary judgment motion have been well-settled.[14] As a

---

**13.** In support of their claim for negligence, plaintiffs do no more than state that "[t]he acts and conduct of defendants, as hereinbefore alleged constitute negligence." *See* Complaint at ¶ 106.

**14.** In 1986, the Supreme Court decided a trilogy of cases in which it set forth these now-familiar standards. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita*

drastic remedy, summary judgment is only available when it is clear that no genuine issue of material fact exists which needs to be resolved at trial, and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. The mere existence of some alleged factual dispute, however, will not defeat such a motion. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Rather Rule 56 requires that there be no *genuine* issue of *material* fact. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12 (emphasis in original).

■■■ The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issue of material fact. *Id.* at 247, 106 S.Ct. at 2510, 91 L.Ed.2d at 211. Once the moving party has met this burden, the burden then shifts to the non-movant to demonstrate that there is a genuine issue of material fact. "Conclusory allegations will not suffice to create such a genuine issue. There must be more than a 'scintilla of evidence', *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 [106 S.Ct. 2505, 2512, 91 L.Ed.2d 202] (1986), and more than 'some metaphysical doubt as to the material facts.' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 [106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538] (1986)." *Twin Lab., Inc. v. Weider Health & Fitness,* 900 F.2d 566 (2d Cir.1990).

■■■ Moreover, as a preliminary matter, the non-movant must "[m]ake a showing sufficient to establish the existence of [the] element[s] essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex,* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. If the non-movant fails to satisfy this initial burden, there can be no genuine issue as to any material fact because "[a] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts im-

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

material." *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Under such circumstances, the moving party is entitled to judgment as a matter of law. *Id.* Finally, in making its determination as to whether the movant is entitled to summary judgment, the court must "[d]raw all reasonable inferences and resolve all ambiguities in favor of the non-moving party." *Rounseville v. Zahl,* 13 F.3d 625, 630 (2d Cir.1994) (citing *Lendino v. Trans Union Credit Info. Co.,* 970 F.2d 1110, 1112 (2d Cir.1992)).

With respect to plaintiffs' federal claims, the County Defendants' motion sweeps broadly. In this regard, they seek to have the court dismiss (1) all causes of action based upon requiring female correction officers to strip search male inmates; (2) all claims against the County of Broome; and (3) all claims against each individual defendant who lacked personal involvement with respect to specific allegations. *See generally* County Defendants' Memorandum of Law. Plaintiffs oppose these requests in their entirety.

Before the court can address the merits of the County Defendants' motion for summary judgment, it must, as a preliminary matter, determine the exact nature of plaintiffs' causes of action. As the following discussion makes clear, this task is complicated by the fact that the parties themselves seem unable to agree on the appropriate definition of these claims.

*B. The Issue of Strip Searches*

■■■ With respect to the issue of strip searches, the County Defendants' analysis is limited to the question of whether or not the County Defendants' requirement that female deputy sheriffs strip search male inmates violates plaintiffs' federal constitutional or statutory rights within the meaning of § 1983. Alternatively, the County Defendants assert that even if this practice does violate plaintiffs' constitutional rights, the individual defendants are entitled to qualified immunity.[15]

15. Although the County Defendants request the dismissal of all causes of action based upon strip searches, they do not analyze this procedure in

In response, plaintiffs present a very different view of the nature of their claims for purposes of the present motion. They begin by defining, for the first time, the exact legal theories upon which they base their federal claims. In this regard, they state that "[s]uit was brought pursuant to 42 USC 1983 and Title VII of the Civil Rights Act of 1964." *See* Plaintiffs' Memorandum of Law at 4. With respect to their Title VII claims, plaintiffs assert that "[t]he County Defendants are responsible for three types of discrimination under Title VII, namely 42 U.S.C. § 2000e–2(a)—hostile work environment, § 2000e–2(c)—quid pro quo discrimination and § 2000e–3(a)—retaliatory discrimination...." *See id.*

Although somewhat less clear with respect to their § 1983 causes of action, plaintiffs contend that "[b]ased upon the common nucleus of facts contained in Point I, Section A: Factual Allegations above, the County defendants, under color of law, deprived plaintiffs of the rights, privileges, immunities and equal protection of the law secured to them by the Fourteenth Amendment to the United States Constitution." *See* Plaintiffs' Memorandum of Law at 13–14. Based upon this statement and reading their factual allegations broadly, while keeping in mind that all of these activities occurred in an employment setting, the court concludes that plaintiffs' § 1983 causes of action are grounded upon a theory that the County Defendants' alleged sexual harassment of plaintiffs violated plaintiffs' equal protection rights because such activities caused them to be treated differently than their male counterparts with respect to the terms, conditions, and privileges of employment because of their gender.

With specific reference to the strip search issue, plaintiffs argue, among other things, that this practice violates their constitutional rights to equal employment opportunity because although female officers were required to strip search male inmates, male officers were not required to strip search female inmates. Thus, according to plaintiffs, this practice constitutes an unequally adminis-

tered job assignment. In addition, plaintiffs contend that the County Defendants' practice of requiring them to strip search male inmates is part of the pattern of sexual harassment to which they were subjected in violation of Title VII.

As these arguments make clear, the parties are addressing very different claims which require very different analysis. For example, the County Defendants ask the court to dismiss all causes of action based upon the requirement that female deputy sheriffs strip search male inmates because such a practice does not violate plaintiffs' federal constitutional or statutory rights. The first problem with this request is that there is no cause of action based **solely** upon this practice. Although strip searches are mentioned specifically only in ¶¶ 22 and 53, this practice is incorporated, by reference, into every cause of action. Thus, reading the complaint as a whole and drawing all reasonable inferences in favor of plaintiffs, the court concludes that the practice of requiring female deputy sheriffs to conduct strip searches of male inmates serves as but one example of the behavior that forms the basis **not only** of plaintiffs' § 1983 causes of action **but also** of their Title VII claims. Moreover, even if the court were to narrow the County Defendants' request, and thus the court's analysis, to plaintiffs' § 1983 claims, the parties' interpretations of the constitutional violation at issue here are at odds. The County Defendants focus upon plaintiffs' right to be free from viewing a nude male body while plaintiffs define the violation as an equal protection claim—the right to be treated equally in terms of their employment, more specifically to be free from sexual harassment.

Given these differences, the court is unwilling to consider the County Defendants' motion for summary judgment on the papers before it. To do so would be unfair to both parties because neither has engaged in the appropriate legal analysis. The court will, however, take this opportunity to offer the parties some guidance in hopes of avoiding

terms of plaintiffs' Title VII claims although this practice is included, by reference, in the causes

of action based upon violations of Title VII.

any further confusion. First, it is important to definitively establish the exact nature of plaintiffs' claims. The complaint as written is, as stated above, not a model of clarity. Attempting to ascertain the exact legal theories upon which plaintiffs base their claims is a frustrating, if not Herculean, task. Thus, the County Defendants' definition of the constitutional violation at issue is certainly reasonable. Obviously, however, as drafters of the complaint, plaintiffs are in the best position to inform the court, and the County Defendants, of the "correct" interpretation. If this motion has served no other purpose, it has at least accomplished this goal. Thus, in the future, the court will construe plaintiffs' complaint in accordance with the assertions contained in their memorandum of law. That is, the court will construe their Title VII causes of action as being based upon theories of hostile work environment, *quid pro quo* sexual harassment, and retaliation. Accordingly, all their factual allegations, including those pertaining to strip searches, will be analyzed against the appropriate legal frameworks for such claims.

Likewise, the court adopts plaintiffs' interpretation of the constitutional violation that serves as the basis for their § 1983 causes of action. In this regard, the court will construe plaintiffs' complaint as charging that the County Defendants violated plaintiffs' right to be treated equally with their male counterparts in the terms, conditions, and privileges of their employment, more specifically to be free from sexual harassment. Accordingly, all their factual allegations, including those pertaining to strip searches, will be analyzed against the appropriate legal framework for such a claim.

Having established a common ground from which the parties can operate, the court deems it appropriate to provide the parties with the opportunity to reevaluate their positions. If, after completing this review, they conclude that any of plaintiffs' causes of action can be disposed of by a motion for summary judgment, the court hereby grants them leave to file such a motion. According-

ly, with respect to plaintiffs' federal causes of action, the court denies the County Defendants' motion for summary judgment, as well as plaintiffs' cross-motion, without prejudice and with leave to renew. In this regard, the court instructs the parties to inform the court in writing within 15 days of the date of this memorandum-decision and order whether they intend to file such motions. If either party so intends, they must file these motions no later than **June 1, 1994.**[16]

### C. Claims Against the Individual Defendants

■ With respect to the claims against the individual defendants, the County Defendants merely state that dismissal of these claims for lack of personal involvement is appropriate. In support of this argument, they submitted affidavits of all the individual defendants except for Lieutenant Van Winkle who is seriously ill. Each of these affidavits refers to specific allegations in the complaint with respect to which the individual defendants contend that they had no involvement. In response, plaintiffs assert that "[a]lthough each defendant was not involved in these individual acts, *each* defendant's discriminatory conduct as alleged herein was responsible for creating and/or perpetrating the environment where such individual acts of discrimination and harassment were permitted to flourish. It is this upon which liability of all defendants is predicated." *See* Plaintiffs' Memorandum of Law at 11 (emphasis in original).

Although the individual defendants, in their affidavits, deny any personal involvement in specific activities, plaintiffs counter these assertions with deposition testimony and interrogatory answers to the contrary. In light of these submissions, the court concludes that plaintiffs have presented sufficient evidence to create a genuine issue of material fact as to the personal involvement of these individuals regarding certain activities which forecloses a grant of summary judgment on this issue. Moreover, the court reaches the same conclusion with respect to plaintiffs' alternative theory that even if the

---

**16.** The court notes that should either party file a new motion, the court does not require resubmission of the papers filed in support of, or in opposition to, the present motions. Rather, the parties may incorporate, by reference, any papers already filed with the court.

defendants did not personally participate in certain acts of harassment, they were aware of the same and are, therefore, liable to plaintiffs in their capacity as supervisors because they did nothing to stop such actions.

A defendant's liability for a constitutional deprivation under § 1983 may arise in several different ways. As the Second Circuit has recognized:

> [t]he defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991) (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted)); *see also Van Pelt v. Finn,* No. 92 Civ. 2977, 1993 WL 465297, *7, 1993 U.S. Dist. LEXIS 15951, at *19 (S.D.N.Y. Nov. 10, 1993) (same); *Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D.N.Y.1989) (quoting *Duchesne v. Sugarman,* 566 F.2d 817, 830 (2d Cir.1977) ("Supervisory officials cannot be held liable under § 1983 solely for the acts of others; 'there must be some showing of personal responsibility.' ")).

Applying this law to the present case, the court concludes that plaintiffs have come forward with sufficient evidence to create an issue of fact with respect to the liability of the Sheriff and his supervisory officers.

 With respect to Deputy Truesdell, who is not a supervisor, however, his liability to plaintiffs must rest entirely upon his personal involvement. In his affidavit in support of the County Defendants' motion, Deputy Truesdell denies any involvement in any matters alleged in the complaint except for in his capacity as a union officer involved in filing grievances. *See* Truesdell Affidavit at ¶ 2. On the other hand, plaintiffs contend that Deputy Truesdell made sexual advances toward Ms. Doolittle, *see* Doolittle Exhibit B at 167–170 (Deposition Testimony) and that he told Ms. Doolittle that the male officers would not back her in conflicts with the inmates, *see id.* at Exhibit 5. Thus, to the extent that these incidents are examples of Deputy Truesdell's personal involvement in harassing plaintiffs, plaintiffs have come forward with sufficient evidence to create an issue of fact regarding Deputy Truesdell's personal involvement in such activities. Accordingly, the court denies the County Defendants' motion for summary judgment with respect to the claims against the individual defendants.

### D. Broome County's Liability

With respect to the issue of Broome County's liability, the County Defendants assert that under the New York State Constitution, prior to 1990, the County was not responsible for the acts of the Sheriff or his deputies. *See* County Defendants' Memorandum of Law at 11–12. Alternatively, they contend that the claims against Broome County should be dismissed because the policies and practices complained of are not the policies of Broome County, and, thus, under § 1983, the County is not liable for the acts of its employees. *See id.* at 13. In response, plaintiffs concede that prior to 1990 the County was not responsible for the acts of the Sheriff or his deputies. Nevertheless, plaintiffs contend that "[s]ince the wrongdoing alleged by plaintiffs against all County Defendants is of a continuing nature, ... Defendant Broome County is responsible for all acts of Defendant Sheriff and his supervisory officers after January 1, 1990." *See* Plaintiffs' Memorandum of Law at 17–18. Alternatively, plaintiffs assert that Broome County is liable, at least for purposes of their § 1983 causes of action, because the County's nondiscrimination policy "[w]as never publicized or implemented at the Broome County Sheriff's Department, ..." *See id.* at 18.

 The fact that the County cannot be held liable for the acts of the Sheriff and his deputies prior to 1990 does not mean that the County is not liable to plaintiffs for the alleged injuries caused by the County Defendants' ongoing sexual harassment of plain-

tiffs. At issue here are two very distinct theories of liability. Under Title VII, an employer can be held liable for the activities of its employees under a theory of respondeat superior. What constitutes "respondeat superior" liability, however, depends upon the particular legal theory upon which the claims are based—i.e., hostile work environment, *quid pro quo* sexual harassment, retaliation. On the other hand, pursuant to § 1983, municipal liability cannot rest upon a theory of respondeat superior. Rather, an employee's actions are attributable to the municipal entity only if those actions are in furtherance of the entity's policy or custom.

The County Defendants assert that the County is not liable to plaintiffs because it has a policy of nondiscrimination in employment, has implemented procedures to enforce compliance with this policy, and has a procedure by which employees, such as plaintiffs, may file complaints alleging discrimination. *See* County Defendants' Memorandum of Law at 13–17. On the other hand, plaintiffs assert that despite the existence of such a policy, the County is liable to them because it does not follow its own procedures and it never informed plaintiffs of any procedure they could follow to lodge their complaints. *See* Plaintiffs' Memorandum of Law at 18–24.

Beginning with *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court has established the principles applicable to municipal liability in § 1983 actions. Pursuant to this line of decisions, municipal liability may be imposed under two theories. First, such liability may exist if "[a] plaintiff [can] demonstrate that [the] constitutional harm suffered was the result of a municipal policy or custom." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir.1992) (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36; *Pembaur*, 475 U.S. at 478–79, 106 S.Ct. at 1297–98; *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir.1991); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir.1986)). Under this theory, "[b]efore the actions of subordinate [municipal] employees can give rise to § 1983 liability, their discriminatory practice must be so manifest as to imply the

constructive acquiescence of senior policymaking officials." *Sorlucco*, 971 F.2d at 871 (citing *Praprotnik*, 485 U.S. at 130, 108 S.Ct. at 927; *Krulik v. Board of Educ. of City of New York*, 781 F.2d 15, 23 (2d Cir.1986)). As the Court noted in *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989), " '[i]t is only when the "execution of the government's policy or custom ... inflicts the injury" that the municipality may be held liable under § 1983.' " (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267, 107 S.Ct. 1114, 1119, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting) (quoting in turn *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38)). Therefore, the court's first inquiry must be "[w]hether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.*

Under the second theory, the one that appears to be applicable here, municipal liability may exist when a valid policy is unconstitutionally applied by municipal employees if those employees were not adequately trained and the constitutional wrong was caused by that failure to train. However, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389, 109 S.Ct. at 1205. Thus, " '[m]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986) (plurality)).

To constitute deliberate indifference to the constitutional rights of its citizens, a municipality's failure to train or supervise its employees must meet three requirements.

First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation. *Id.* Thus, a policymaker does

not exhibit deliberate indifference by failing to train employees for rare or unforeseen events.

Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. . . .

Finally, the plaintiff must show that the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights. *City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1205. Thus, municipal policymakers may appropriately concentrate training and supervisory resources on those situations where employee misconduct is likely to deprive citizens of constitutional rights.

*Walker v. City of New York,* 974 F.2d 293, 297 (2d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

In the present case, plaintiffs assert that the County Defendants have violated their constitutional right to equal protection in employment; i.e., to be free from sexual harassment. The alleged violators of this constitutional right, i.e., those who sexually harassed plaintiffs, are Sheriff Ruffo, certain of his supervisory officers and Deputy Truesdell. In opposition to the present motion, however, plaintiffs contend that because the County Personnel Office has the ultimate authority to adjust the County's affirmative action policy, its actions, or lack thereof, are sufficient to hold the County liable to plaintiffs under § 1983. *See* Plaintiffs' Memorandum of Law at 19–20.

There is no dispute that the Broome County Legislature adopted an affirmative action/equal employment opportunity plan to prevent discrimination in its personnel policies. *See* County Defendants' Exhibit I (Permanent Resolution No. 270, adopted Sept. 8, 1976). Section III of this plan provides that the "Broome County Executive has delegated Affirmative Action/Equal Employment Opportunity responsibilities to the Broome County Personnel Officer who has the ultimate responsibility to insure County Govern-

ment compliance with [Federal/State mandates]." [17] *See id.* In 1977, the County Legislature authorized and adopted a revised Affirmative Action Plan "[i]n order to place the County of Broome in full compliance with Federal and State Legislation insuring non-discriminatory practices in employment, . . ." *See* County Defendants' Exhibit L (Resolution No. 306). Attached to Resolution No. 306 is a document setting out the goals, the action needed to attain those goals, the individual responsible for such action, and the target and completion dates for these actions with respect to various areas of the County's Affirmative Action Plan. *See id.* Based upon these documents, plaintiffs argue that the County is liable to them because, despite its stated policies, the Personnel Officer, as the delegated official with final policy making authority, failed to fulfill his responsibility to plaintiffs with regard to non-discrimination in employment. *See* Plaintiffs' Memorandum of Law at 24.

■■■■■ The first issue that the court must address is whether the Personnel Officer is a policymaker for purposes of municipal liability under § 1983. In *Pembaur,* the Supreme Court "[m]ade clear that a municipality is not liable merely because the official who inflicted the constitutional injury had the final authority to *act* on its behalf; rather, . . ., the official in question must possess 'final authority to **establish** municipal policy with respect to the [challenged] action.' " *City of St. Louis v. Praprotnik,* 485 U.S. 112, 139, 108 S.Ct. 915, 932, 99 L.Ed.2d 107 (1988) (emphasis added) (quoting *Pembaur,* 475 U.S. at 481, 106 S.Ct. at 1299). Thus, "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on exercise of that discretion." *Id.* at 139–40, 108 S.Ct. at 932 (citing *Pembaur,* at 481–82, 106 S.Ct. at 1299).

The County's Affirmative Action Plan provides that it is the delegated responsibility of the Broome County Personnel Division to, among other things, "[e]valuate, review and

**17.** The text in brackets is illegible in the court's copy of Resolution No. 270. Thus, the court has relied upon plaintiffs' memorandum of law for this text.

modify County personnel policies/directives as necessary to insure updated compliance with civil service and particularly EEO mandates." *See* County Defendants' Exhibit I, § III(b)(6). Although it is a close call as to whether this statement provides authority for the Personnel Officer to make final policy determinations or whether it simply authorizes the Personnel Officer to act on the County's behalf, the court finds that the Personnel Officer is a policymaker for purposes of plaintiffs' § 1983 causes of action. This conclusion, however, does not end the court's inquiry. Plaintiffs' constitutional injury, being subjected to sexual harassment in the workplace, was not inflicted by the Personnel Officer, but rather by Sheriff Ruffo and certain other members of the Sheriff's Department. Thus, the only possible theory upon which municipal liability can rest is the County's failure to train and/or supervise these employees.

██ In order to demonstrate that the Personnel Officer's failure to properly train and/or supervise the members of the Sheriff's department with respect to the County's Affirmative Action/Equal Employment Opportunity program constitutes deliberate indifference to plaintiffs' constitutional right to be free from sexual harassment, plaintiffs must meet the three requirements set forth in *Walker*. First, plaintiffs must show that the Personnel Officer, as a policymaker, knew to a moral certainty that the Sheriff and his supervisory officers would confront an employment problem of this nature. Plaintiffs have satisfied this requirement by showing that the County implemented the plan itself—the very reason for this policy was to prevent employment discrimination. If the County had not believed that its employees would face such problems, there would have been no need to implement such a policy.

Second, plaintiffs must demonstrate that when faced with complaints of sexual harassment, a supervisory officer is faced with a difficult choice of the sort that training or supervision would make less difficult. Plaintiffs have satisfied this requirement by alleging that if the Personnel Officer had trained the Sheriff and his supervisory officers in the

proper method for handling such complaints and had instructed them that sexual harassment would not be tolerated, they would have taken plaintiffs' complaints seriously. According to plaintiffs, however, the lack of training led to the County Defendants' inaction in some instances and inappropriate behavior in others.

Finally, plaintiffs must demonstrate that the wrong choice by the employee will frequently cause a deprivation of constitutional rights. Plaintiffs have satisfied this requirement by alleging that the Sheriff's Department took no action when complaints of sexual harassment were made, that sexually harassing conduct was tolerated and in fact participated in by some supervisors, and that, as a result, plaintiffs' constitutional rights were violated on an ongoing basis. Having satisfied all three of these requirements, the court concludes that plaintiffs have come forward with sufficient evidence to, at the very least, create a genuine issue of material fact with respect to the question of the County's liability to plaintiffs based upon its failure to train and/or supervise the Sheriff and his supervisory officers with respect to the County's Affirmative Action program. Accordingly, the court denies the County Defendants' motion for summary judgment with respect to this issue.

### CONCLUSION

For the reasons stated above, the court denies the County Defendants' motion to preclude the expert testimony of Dr. Ruth Blizard concerning Ms. Doolittle's claim of psychological trauma. This testimony will be allowed, however, only upon the parties' compliance with this court's instructions as set forth in this memorandum-decision and order. The court also denies the County Defendants' motion to preclude the testimony of Ms. Blakeslee and Ms. Merrill with respect to the psychological injuries they allegedly suffered as a result of the actions of the County Defendants.

With respect to plaintiffs' pendent state claims, the court grants the County Defendants' motion and dismisses plaintiffs' eighth cause of action in its entirety.

Finally, with respect to plaintiffs' federal claims, the court denies the County Defendants' motion for summary judgment without prejudice and with leave to renew. In this regard, the court instructs the parties to comply with the requirements set forth in this memorandum-decision and order. With respect to that portion of the County Defendants' motion regarding the liability of the individual defendants and the County under § 1983, the court denies the County Defendants' motion for summary judgment. In light of these decisions, the court denies plaintiffs' cross-motion for summary judgment in its entirety.

IT IS SO ORDERED.